PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN JOSEPH MERZBACHER,

        *Petitioner-Appellee,*

v.

BOBBY P. SHEARIN; DOUGLAS F. GANSLER,

        *Respondents-Appellants.*

No. 10-7118

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, Circuit Judge, sitting by designation.
(1:07-cv-00067-AMD)

Argued: October 23, 2012

Decided: January 25, 2013

Before MOTZ, DUNCAN, and FLOYD, Circuit Judges.

---

Reversed by published opinion. Judge Motz wrote the opinion, in which Judge Duncan and Judge Floyd joined.

---

## COUNSEL

**ARGUED:** Edward John Kelley, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellants. Henry Mark Stichel, GOHN, HANKEY & STICHEL, LLP, Baltimore, Maryland, for Appellee. **ON**

**BRIEF:** Douglas F. Gansler, Attorney General of Maryland, Baltimore, Maryland, for Appellants.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

A Baltimore jury convicted John Joseph Merzbacher of child rape and related crimes. When his direct appeal failed, Merzbacher sought state post-conviction relief alleging that his trial lawyers denied him effective assistance of counsel in failing to notify him of, and counsel him about, a pre-trial plea offer. After conducting evidentiary hearings, the state court refused to grant him post-conviction relief. Merzbacher then petitioned for a writ of habeas corpus in federal court, which the court granted. Given the great deference to the state court judgment required by federal law, we must reverse.

I.

A.

In the early 1970s, Merzbacher taught at a small Catholic school in Baltimore; eleven-year-old Elizabeth Murphy was one of his students. Years later, Ms. Murphy told authorities that Merzbacher had subjected her to three years of sexual, physical, and emotional abuse. And in January 1994, the State of Maryland charged Merzbacher with committing a number of sexual abuse crimes—including rape, perverted practice, and carnal knowledge of a female child under the age of fourteen years—against Ms. Murphy.

Merzbacher retained M. Christina Gutierrez to represent him. After the State brought charges involving an additional fourteen children against Merzbacher, he qualified for appointed counsel. William Kanwisher, a public defender,

was then appointed to represent him. Gutierrez and Kanwisher agreed to cooperate in Merzbacher's defense against all charges.

In December 1994, following a pretrial motions hearing in the Murphy case, prosecutors and defense counsel met with the then-presiding Judge, Clifton J. Gordy, in the judge's chambers. Merzbacher did not attend. During that meeting, the prosecutors discussed with Gutierrez and Kanwisher the possibility of their client pleading guilty in the Murphy case in exchange for a recommendation of a sentence of ten years' incarceration and dismissal of other charges. Judge Gordy bound himself to imposing a sentence of ten years' incarceration should the plea be presented to him.

Merzbacher never accepted the offer and the parties never resumed plea discussions. By the time the Murphy trial began in May 1995, Judge Gordy, as a result of the rotating schedule of assignments, was no longer assigned to the case. Instead, Judge Robert I. H. Hammerman presided over Merzbacher's trial. The jury convicted Merzbacher on all counts. Judge Hammerman denied Merzbacher's motion for a new trial and sentenced him to four life sentences and one ten-year sentence, all running concurrently. On direct appeal, the Court of Special Appeals affirmed in an unreported opinion. The Court of Appeals granted certiorari and then affirmed. *See Merzbacher v. State*, 697 A.2d 432 (Md. 1997).

## B.

In July 1998, Merzbacher petitioned for post-conviction relief in state court arguing in part that Gutierrez and Kanwisher provided constitutionally ineffective counsel when they failed to convey the ten-year plea offer to him and advise him of his options with respect to that offer. The post-conviction case was originally assigned to Judge William D. Quarles, then a state trial judge. However, the State moved to recuse Judge Quarles, because, in a prior case in which

Gutierrez appeared before him, Judge Quarles stated on the record that Gutierrez had lied in court. Judge Quarles granted the motion and the case was reassigned to Judge John N. Prevas (hereinafter "the state court").

Over five days between October 2000 and February 2001, the state court held hearings on Merzbacher's petition in which the court considered testimony and legal argument. Merzbacher offered the testimony of Gutierrez, Kanwisher, and himself; the State cross-examined all three witnesses.

Gutierrez testified to her expertise as a criminal defense lawyer who had handled approximately 1000 criminal cases since becoming engaged in the practice of law in 1982. Gutierrez explained that she had advised Merzbacher on a number of trial issues—including whether he should request a change of venue and testify at trial—and that he had always taken her advice. Gutierrez acknowledged that Merzbacher had never at any time, not even post-trial, admitted guilt as "to the crimes [of] which he was accused."

As for the plea offer, Gutierrez testified that in Judge Gordy's chambers, in late 1994 or early 1995, the State "essentially agreed" that Merzbacher could plead guilty to one or two counts—rape and child abuse—in the Murphy case "for ten years" and "that all of the other cases . . . fifteen or sixteen of them would all be nol prossed." In her view, this was a firm offer with terms "somewhere between ok and good . . . . I'd put it not quite good but as good as it's going to get." Following Merzbacher's conviction, Gutierrez recognized her duty to communicate this offer to Merzbacher, but testified that she had failed to do so because she was moving her office and very busy when the offer was made, and later, while preparing for trial in this case, she never "thought" about the offer. Gutierrez acknowledged that, although plea offers were "on the table in a lot of cases" that she had handled, she could not recall "another case" in which she had failed to communicate a plea offer to her client.

Gutierrez's co-counsel, Kanwisher, confirmed that Gutierrez was lead counsel, that Merzbacher invariably had followed Gutierrez's advice on all trial matters, that Merzbacher had "always maintained his innocence," and that the State had offered the ten-year plea. Kanwisher opined that this was "a good deal and a fair deal" for Merzbacher and that defense counsel "should have probably urged him to take it." But believing that Gutierrez, who had a closer relationship with Merzbacher, would inform Merzbacher about the offer, Kanwisher did not do so. Kanwisher further testified that he and Gutierrez had disagreed as to the desirability of the plea; he believed Gutierrez "was very confident that she could" obtain an outright acquittal.

Merzbacher himself testified that he had followed Gutierrez's advice as to venue, whether he would testify, and other trial matters. He stated that prior to post-conviction proceedings, neither she nor anyone else had communicated to him the ten-year plea offer. Merzbacher testified that had he known of the plea offer, he would have accepted it "most graciously." He explained that he was "scared" and "didn't have any money to continue to fight" through "eleven or fifteen different trials," that publicity was "so bad that [he] was ruined for the rest of [his] life," and that the "media can just blow all of these things out of proportion."

Then the State presented its witnesses—Roberta Siskind, one of the trial prosecutors, and Judge Gordy—who were also cross-examined. (The State noticed Gutierrez as a witness in its case but before the State could call her, Gutierrez became unavailable to testify due to health problems requiring hospitalization.)

Siskind acknowledged that there had been "a discussion" before Judge Gordy "in which we were talking about ten years." She explained "it wasn't more specific than that." Merzbacher "would plead guilty to a number of those cases" and "we did not define which ones those would be." Siskind

repeatedly testified that the State offered only a "guilty plea" and that she "absolutely" would not have accepted a plea under *North Carolina v. Alford*, 400 U.S. 25 (1970), with Merzbacher not admitting guilt but admitting only that the prosecution would present enough evidence to convict. She recalled that Gutierrez and Kanwisher said they would take the offer to Merzbacher. Siskind had a vague recollection that later Gutierrez "came back and told us . . . we weren't going anywhere, meaning there weren't going to be any further discussions." Siskind related that this "wasn't really a surprise because we didn't really expect him to take anything."

Judge Gordy testified that there was "some discussion" of a possible ten-year plea at a pretrial meeting in his chambers discussing "a lot of things." Judge Gordy believed that this was "a good deal" for Merzbacher, indeed a surprisingly generous offer, and testified that if Merzbacher had agreed to it, he (Judge Gordy) would have accepted it. According to Judge Gordy, although Gutierrez did not say the ten-year deal was "ridiculous," she also did "not jump on it." Judge Gordy explained that "throughout the Motions' process," Gutierrez "had reiterated . . . that her client was not guilty, did not do these things and was insistent upon having his day in Court." During the chambers meeting, Judge Gordy remembered that "there was some discussion that . . . Merzbacher[ ] would not likely plead guilty to such a heinous offense in the presence or that would come to the attention of his wife, that he had denied these allegations throughout and that a plea was not likely." The Judge testified that he "got the impression that there were problems with the Defendant pleading guilty to anything, whether it be five years [or] ten minutes."

Finally, Judge Gordy remembered no discussion as to the "structure" of the ten-year plea; rather "[t]he ten years was, kind of, out there and I never heard back from anyone and the end of the term came and the case went to trial." Similarly, he had no memory of an *Alford* plea ever being discussed and no

"recollections as to if the ten years was accepted . . . to which case" or cases it would "apply."

## C.

On March 25, 2003, the state court issued an opinion and order denying Merzbacher's petition for post-conviction relief. Merzbacher appealed to the Court of Special Appeals. On March 11, 2004, the appellate court remanded so that the state court could expressly address "in the first instance" "what advice — if any — trial counsel actually gave [Merzbacher] as to whether the plea should be accepted, and . . . whether counsel's advice — or lack thereof — constituted 'ineffective assistance of counsel.'" On remand, the parties submitted supplemental memoranda, and the state court heard legal argument, but did not consider any additional evidence.

On June 20, 2006, the state court entered an opinion and order again denying post-conviction relief. The new opinion, which incorporated an amended version of the original opinion, provided no new facts or analysis but, the state court explained, "addressed, in expanded reiteration, the subject identified" in the remand instructions. The state court acknowledged that some "factors" cut in Merzbacher's "favor," *i.e.*, the disparity between the ten-year plea offer and the life sentences he received, the fact that he did not testify in his own defense, and the post-conviction testimony from him and his lawyers that no plea offer had been conveyed to him. However, the state court found:

> (1) Merzbacher engaged in wishful thinking when he testified at the post-conviction hearing that he was not apprised of the plea offer.

> (2) Kanwisher was out of the loop on the issue and cannot shed light on what occurred.

> (3) Gutierrez committed perjury at the post-conviction hearing when she testified that she never

advised Merzbacher of the offer, that she was so busy managing her office that she forgot to, and that the subject of a guilty plea never came up in her conversations with Merzbacher.

The state court recognized the difficulty with drawing a "negative inference" that Gutierrez told Merzbacher about the offer "where the only direct evidence was to the contrary, but not believed." Nonetheless this is what the state court did, concluding:

> Because the Court believes neither Merzbacher nor Gutierrez with respect to this assertion [that Gutierrez never told Merzbacher about the plea], it draws the inference from the totality of the circumstances that the [plea] offer was discussed and rejected.

The state court then explained that it drew this negative inference because it could not square a contrary conclusion with either Merzbacher's "vociferous[ ]" protestations of innocence and his "logical" wish to avoid "an embarrassing guilty plea" when he had "a good chance of successfully maintaining his innocence," or Gutierrez's long hours of work on the case, procurement of favorable evidentiary rulings, and certain facts outside the record assertedly demonstrating her lack of credibility. The state court relied heavily on these extra-record facts, involving Gutierrez's prior criminal convictions and eventual disbarment, in finding Gutierrez not credible.

Finally, the state court further explained that it could not grant post-conviction relief because the ten-year offer "was never firmed up in terms of details." Rather, the court found, "the plea discussions finalized only one leg of a putative plea agreement, the length of sentence; and did not finalize the other legs." Specifically, the plea discussions "did not finalize" the counts to which Merzbacher would plead, whether the State or the court would accept an *Alford* plea, and how

a plea would affect the pending civil suits against Merzbacher.

Merzbacher filed an application for leave to appeal the state court's denial of post-conviction relief. In January 2007, the Court of Special Appeals denied him leave to appeal.

Merzbacher then sought relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Maryland (hereinafter "the federal court"). The federal court held several nonevidentiary hearings and considered extensive legal memoranda. On July 30, 2010, the court issued a comprehensive opinion and order granting habeas relief.

The federal court found: (1) the record before the state court "itself provides clear and convincing evidence rebutting the presumptive correctness of the dispositive facts relevant to the state court's adverse credibility determination"; (2) the overall fact-finding of the state court was "not simply incorrect, but wholly unreasonable," because the state court "'ma[d]e factual findings . . . under a misapprehension as to the correct legal standard'" and "'the fact-finding process itself [was] defective'" (quoting *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004)); (3) the state court was more than "unreasonable" in finding, based on no evidence other than information outside the record going to credibility, that Gutierrez had told Merzbacher about the plea, and was "unreasonable" in finding Kanwisher did not have an obligation to tell Merzbacher about the plea; and (4) Merzbacher's testimony before the state court "unambiguously asserts that he would have immediately accepted the State's plea offer" and the terms of the offer were "sufficiently specific so that he could have accepted it."

The federal court thus granted a writ of habeas corpus and ordered the State to "return this prosecution to the status quo ante . . . that is to say, the State shall afford . . . Merzbacher an opportunity to accept its prior offer of a plea agreement,

provided, however, that the performance by the state of any such plea agreement shall be expressly conditioned on [ ] its acceptance of same by a judge of the Circuit Court of Baltimore City, or as further ordered by the appellate courts of Maryland."

The State timely noted an appeal.[1]

## II.

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. *See Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks omitted). As explained in *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance claims involving the plea process. Pursuant to that test, to prevail on an ineffective assistance claim, a petitioner must establish that (1) counsel's performance was deficient and (2) there is a reasonable probability that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687, 694.

In all cases, to establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Courts "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' in order to avoid 'the distorting effects of hindsight.'" *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689).

---

[1]After obtaining from this court a certificate of appealability, Merzbacher noted a cross-appeal as to the appropriateness of the remedy ordered. Given our holding here, we have dismissed the cross-appeal as moot.

Generally speaking, to establish prejudice under *Strickland*, the petitioner must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When an ineffective assistance claim arises in the plea context, the Supreme Court has said that the *Strickland* prejudice inquiry focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") § 104, 28 U.S.C. § 2254 (2006), provides two "independent requirements" for federal court review of state court factual findings in habeas petitions. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003). Under § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." And, under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," unless the petitioner satisfies his "burden of rebutting the presumption of correctness by clear and convincing evidence." The two provisions, operating in tandem, require that "[t]o secure habeas relief, petitioner must demonstrate that a state court's finding . . . was incorrect by clear and convincing evidence, and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court." *Miller-El*, 537 U.S. at 348.

Thus, under § 2254 "'federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)) (alteration in original). Rather, "for a federal habeas court to overturn a state court's credibility judgments, the state court's

error must be stark and clear." *Id.* at 324. We have repeatedly emphasized the deferential standard of review, especially of a state court's credibility findings. *See, e.g.*, *id.*; *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) ("Credibility determinations, such as those the state . . . court made regarding [a witness], are factual determinations. As such, they 'are presumed to be correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.'") (quoting *Miller-El*, 537 U.S. at 340).

As the Supreme Court has explained, although "[t]he term 'unreasonable' is no doubt difficult to define . . . [i]t suffices to say . . . that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 130 S. Ct. 841, 849 (2010) (internal quotation marks omitted). Rather, "even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.* (internal quotation marks omitted).

Merzbacher claims that his trial counsel provided constitutionally ineffective assistance when they failed to convey the ten-year plea offer to him and failed to advise him of his options with respect to that offer. His argument that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2), carried the day below and he obtained habeas relief from the federal court. We review de novo when, as here, the "decision on a petition for a writ of habeas corpus is based on the state court record." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008).

### III.

In granting Merzbacher relief pursuant to § 2254, the federal court clearly understood the substantial constraints, outlined above, which AEDPA imposed on it. Moreover, like the state court, the federal court recognized that to establish constitutionally ineffective counsel, Merzbacher had to demonstrate that (1) counsel provided him with constitutionally deficient representation *and* (2) a reasonable probability existed that the deficient representation prejudiced him. *Strickland*, 466 U.S. at 687. The first *Strickland* prong — deficiency in representation — dominated both the state and the federal courts' analyses. Accordingly, we turn first to that prong.

Merzbacher presented only testimonial evidence to support his claim of deficient representation, and the state court's rejection of Merzbacher's claim rested on its determinations of the witnesses' credibility. Section 2254 commands a federal court to "presume" the correctness of state court factual findings and only overturn a state court's credibility finding when the state court's error is "stark and clear." *Cagle*, 520 F.3d at 324. As detailed above, the record here does contain some evidence to support the state court's determination as to Gutierrez's general lack of credibility. For example, Gutierrez admitted that this was the *only* time in a career involving hundreds of criminal cases that she recalled having failed to convey a plea offer to a client. And she offered less than persuasive reasons for her failure to do so, *i.e.*, she moved her office when the offer was made and it "was out of [her] mind" later when she was working to prepare for trial in this very case.

But, as the federal court carefully explained, the state court's analysis contains serious flaws. For example, in finding Gutierrez not credible, the state court heavily and improperly relied on highly prejudicial evidence from outside the record—the circumstances of Gutierrez's delayed admission

to the Maryland Bar, including disclosure of two shoplifting convictions, and newspaper accounts of her disbarment in 2001.

Further, and perhaps ultimately more significantly, the federal court pointed out that the record before the state court contained unrebutted testimony that Merzbacher was never told about the ten-year offer. Not only did Merzbacher so testify but the only other persons in a position to know—his two lawyers—unequivocally confirmed that testimony. Their testimony provides powerful support for his claim because, as the federal court noted, it "cut significantly against their own interests since it suggests professional malfeasance."

Moreover, even if Gutierrez's testimony is not believed on this point, there is not a shred of evidence that Merzbacher's lawyers counseled him about the plea, as they were required to do in providing effective assistance of counsel. *See Lafler*, 132 S. Ct. at 1387. Tellingly, even though the state court found that Gutierrez had conveyed the plea offer to Merzbacher, it made no findings as to (or even any mention of) Gutierrez's counseling of Merzbacher.[2]

For these reasons, whether Merzbacher established a reasonable probability that he received deficient representation presents a very close question—but it is a question we need not resolve here. This is so because even if Merzbacher did demonstrate that the state court was unreasonable in finding he did not receive deficient performance under *Strickland*, he did not demonstrate that the state court was unreasonable in finding it unlikely that *Strickland* prejudice resulted from this deficient performance.

---

[2]The undisputed evidence as to Gutierrez's confidence in her ability to win at trial and her tepid view of the plea offer would certainly permit the inference that, even if she did tell Merzbacher of the plea offer, she did not provide appropriate counseling to him as to whether to accept it.

We note that although the *Strickland* test speaks of performance first and prejudice second, in announcing its test the Supreme Court explained that "there is no reason for a court deciding an ineffective assistance claim" to resolve "both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697. Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* We find this is just such a case, and accordingly turn to the *Strickland* prejudice prong.

## IV.

To show prejudice from ineffective assistance of counsel in a case involving a plea offer, petitioners must demonstrate a reasonable probability that (1) "they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 132 S. Ct. at 1409; *accord Lafler*, 132 S. Ct. at 1385.

The state court most certainly did not follow this precise language in its findings. (It could not have done so for the Supreme Court did not issue *Frye* and *Lafler* until well after the state court had ruled.) But, the state court did make findings relevant to both elements of the *Frye* prejudice test. We consider, in turn, its findings with respect to each of those two elements.

## A.

As to whether Merzbacher demonstrated a reasonable probability that he would have accepted the ten-year plea, the state court found Merzbacher did not because "he avidly and vociferously maintained his innocence" throughout the proceedings, was still subject to numerous civil suits, would not have

admitted to any of the allegations in his wife's presence or to her knowledge, and stood "a good chance of successfully maintaining his defense."

Merzbacher argues that he has demonstrated a reasonable probability that he would have accepted the plea by simply offering his own post hoc testimony that he would have done so and pointing out the disparity between the ten-year plea and the life sentences he received. Merzbacher argues that these two pieces of evidence, without more, demonstrate the requisite prejudice under *Frye* and *Lafler*. Plaintiff-Appellee's Br. at 33-36; *id.* at 36 (quoting *Lafler*, 132 S. Ct. at 1387 ("prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence")).

What exactly *Frye* and *Lafler* require of a petitioner to demonstrate prejudice is not clear at this time. The Sixth Circuit has adopted the view that a petitioner's own credible testimony that he would have accepted a plea offer combined with a disparity between the sentence offered and the sentence actually received establishes a reasonable probability that the petitioner would have accepted the plea. *See, e.g.*, *Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003); *see also Titlow v. Burt*, 680 F.3d 577, 588-89 (6th Cir. 2012), *petition for cert. filed*, No. 12-414 (U.S. Oct. 2, 2012). The Seventh Circuit requires a petitioner to offer "objective evidence" that establishes a reasonable probability of acceptance. *See, e.g.*, *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991). The Supreme Court has not yet resolved what, if anything, a petitioner must show in addition to his own credible post hoc testimony and a sentence disparity to satisfy the *Strickland* prejudice prong. *Cf. Frye*, 132 S. Ct. at 1411.

But it is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible. Thus in *Frye*, the Court's holding that a petitioner had established

prejudice rested on its finding that the petitioner's later acceptance of a less advantageous plea lent credibility to his post hoc testimony. *See id.* ("There appears to be a reasonable probability Frye would have accepted the prosecutor's original offer of a plea bargain if the offer had been communicated to him, *because* he pleaded guilty to a more serious charge, with no promise of a sentencing recommendation from the prosecutor." (emphasis added)); *see also Titlow*, 680 F.3d at 591 ("Titlow's position that [she would] have accepted the plea offer but for Toca's intervening advice is bolstered by the fact that she had actually accepted the plea on the record at the October 2001 hearing. . . . We may consider this testimony as evidence of Titlow's intent."). Accordingly, only if Merzbacher's testimony that he would have accepted the plea was deemed credible could *Frye* and *Lafler* assist him. The state court found this testimony not credible. Our close examination of the record and application of §§ 2254(d)(2) and 2254(e)(1) require us to defer to that finding.

1.

First, Merzbacher has failed to demonstrate, as required by § 2254(d)(2), that the state court's adjudication that his testimony was not credible that he would have accepted the plea "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Credibility determinations are factual determinations. As such, a decision based on a credibility determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller-El*, 537 U.S. at 340. Merzbacher's self serving assertion that he would have accepted the plea is, as both the state and federal courts recognized, "the type of testimony . . . subject to heavy skepticism." *See United States v. Day*, 969 F.2d 39, 46 n.9 (3d Cir. 1992) ("[C]ourts should be wary of this sort of claim because defendants will always want the best of both worlds: the chance at acquittal at trial,

yet the chance to plead guilty if the trial defense fails."). Merzbacher has failed to show that the state court was objectively unreasonable in finding that this testimony was only "wishful thinking," entitled to no credence.

In so holding, we recognize that the federal court's contrary conclusion that Merzbacher would have accepted the plea rested not just (or even primarily) on its belief in Merzbacher's own testimony. Rather, the federal court also relied on the "exceptional genero[sity]" of the ten-year offer, and Merzbacher's "disastrous" legal situation, with the prospect of the victims in sixteen cases "offer[ing] specific, emphatic and shocking testimony" against him. But even the federal court acknowledged there was "some evidence" supporting the state court's findings that Merzbacher would not have accepted the plea. Thus, the federal court recognized that "[i]t is undisputed that Merzbacher maintained his innocence throughout," that "evidence supported th[e] idea that" he "would have personal difficulty pleading guilty because he did not want to lose the support of his family and friends," and that "Gutierrez testified that she believed that she could win [the Murphy case]." The federal court simply found the former evidence far more persuasive than the latter.

But AEDPA does not permit a federal court to make such a determination. The state court and the federal court reviewed the same somewhat conflicting evidence as to whether Merzbacher would have accepted the plea. AEDPA requires deference to the state court's assessment of that evidence, even if the assessment is incorrect, unless it is unreasonable. *Wood*, 130 S. Ct. at 850-51 (holding that, on habeas review, a federal court must uphold a state court decision when, "[r]eviewing all of the evidence," the state court's decision "even if . . . debatable, . . . is not unreasonable").

The state court did not act unreasonably in finding Merzbacher not credible when he stated that he would have taken the plea if it had been offered to him. This is especially so

given that only the state court had the opportunity to observe the testimony on this critical point. *See Cagle*, 520 F.3d at 324. "A federal court can disagree with a state court's credibility determination," *Miller-El*, 537 U.S. at 340, but disagreement alone is not enough. The federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented, that is, it is not "debatable among jurists of reason." *Id.* at 336. In this case, the record evidence does not permit that conclusion.

Accordingly, we must hold that Merzbacher has failed to meet his burden under § 2254(d)(2).

2.

Moreover, Merzbacher did not rebut the state court's findings by clear and convincing evidence as required by § 2254(e)(1) and so his petition for habeas relief fails for this additional reason. Merzbacher does not actually contend that he did satisfactorily rebut the state court's findings. Instead, he argues that "[t]here was no evidence to support the [state c]ourt's fact finding." Plaintiff-Appellee's Br. at 23.

Merzbacher relies on *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008), in which the Seventh Circuit held that "[w]ith nothing in the record to back it up, the trial judge's finding was clearly unreasonable." The federal court agreed, citing another Seventh Circuit case, *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000) ("If a state court's finding rests on thin air, the petitioner will have little difficulty satisfying the standards for relief under § 2254[(e)(1)]."). We do not disagree with this suggestion. For as the Supreme Court has instructed, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial

review," *Miller-El*, 537 U.S. at 340. However, in this case, the state court's findings do not "rest[ ] on thin air."[3]

Rather, as noted above, the federal court itself recognized that there was "some evidence" before the state court supporting the state court's findings that Merzbacher demonstrated no prejudice. *See supra* Part IV.A.1. The federal court simply found the evidence "militating towards" finding Merzbacher would have accepted the plea bargain was "far more *compelling*" than that which the state court relied on in finding Merzbacher would not have accepted it. (Emphasis added.)

The federal court's disagreement with the state court derived not from "clear and convincing evidence" in the record that rebutted the state court's fact-finding as required by § 2254(e)(1). Rather, it rested on the different weight the federal court gave to the evidence previously evaluated by the state court. Accordingly, Merzbacher's petition for habeas relief also fails to meet the requirements of § 2254(e)(1).

---

[3]The federal court suggested that the state court's reliance on a "negative inference" in holding that Gutierrez advised Merzbacher of the offer "disregard[ed] clear and long-settled Maryland law" as to negative inferences. As the federal court noted, under Maryland law, a fact finder's "prerogative not to believe certain testimony . . . does not constitute affirmative evidence to the contrary." *In re Gloria H.*, 979 A.2d 710, 719 (Md. 2009). But on post-conviction review, the State did not bear the burden of proving that Merzbacher in fact had received effective assistance of counsel. Instead, Merzbacher bore the burden of proving that he had received constitutionally deficient performance that prejudiced him. Accordingly, the state court did not err in holding, based on its findings as to credibility, that Merzbacher had failed to meet this burden. *See Lonberger*, 459 U.S. at 435 ("While disbelief of [a prisoner's] testimony may not form the basis for any affirmative findings by the state trial court on issues with respect to which the state bore the burden of proof, it certainly negates any inferences favorable to [the prisoner] such as those drawn by the Court of Appeals, based on his testimony before the Ohio trial court.").

### B.

The state court additionally made findings relevant to the second element of the *Frye* test: whether there was a reasonable probability that "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." 132 S. Ct. at 1409. Again, our examination of the record and §§ 2254(d)(2) and 2254(e)(1) require us to defer to these findings.

The state court determined that the "plea discussions finalized only one leg of a putative plea agreement, the length of sentence and did not finalize the other legs." In light of the unsettled issues, the state court found "impossible" Merzbacher's task of "convincing the court that the discussion of a plea to ten years could have been massaged into a mutually agreeable acceptance of an offer." As a result, the state court determined that Merzbacher failed to establish a reasonable probability that the prosecutor and the presiding judge would ultimately have accepted and entered a "mutually agreeable" plea.

On review, the federal court held that "the evidence clearly indicates a sufficiently well-defined offer" to infer that the plea would have been agreed to, accepted, and entered. The federal court arrived at this holding despite finding that (1) it remained to be decided "which cases would be nol prossed and which cases would get the guilty plea," *and* (2) "it is unclear if the plea would have been an *Alford* plea (Judge Gordy indicated that he would not have accepted such a plea) or a straight guilty plea." As to the former, the federal court characterized this unresolved issue as a "tweak" that could be resolved "without much additional negotiation"; as to the latter, the federal court provided no explanation but apparently did not believe this lack of clarity rendered the offer "[in]sufficiently well-defined."

We do not agree that the evidence before the state court "clearly indicates a sufficiently well-defined offer." Rather, as

the federal court acknowledged, several of the offer's terms lacked definition. Moreover, the undefined terms were of the sort that require substantial negotiation and compromise. This is particularly so given, as the federal court recognized, that this case involves charges as "hideous and heinous" as child rape, in which a large number of victims had come forward, and which attracted extraordinary public attention. We cannot agree with the federal court's characterization of the remaining negotiations as requiring only "a few tweaks" in light of Merzbacher's persistence in maintaining his innocence and the likely immense pressure on the State to obtain a result the public could swallow.

Certainly, there may be cases in which a petitioner can show *Strickland* prejudice despite the incipience of the plea offer he did not accept due to his counsel's lack of communication or inadequate advice.[4] However, in a case like this, in which significant evidence weighed against finding the petitioner and the prosecutor would have agreed on a plea, the offer's nascence figures prominently in the calculus. The lack of definition in the plea offer makes it substantially harder to determine it likely that a plea acceptable to Merzbacher would have been "entered without the prosecution canceling it or the trial court refusing to accept it." *Frye*, 132 S. Ct. at 1409.

Accordingly, Merzbacher has failed to demonstrate that the state court's determination there was no reasonable probability that the plea would have been entered and accepted "was based on an unreasonable determination of the facts in light

---

[4]*Frye* involved an indisputably formal plea and so the Supreme Court had no need to resolve how to consider a nascent plea offer. 132 S. Ct. at 1408. The *Frye* Court did, however, encourage prosecutors and judges to adopt procedures to avoid problems inherent in nascent plea offers by requiring written plea offers and/or making all formal plea offers part of the record before trial. *Id.* at 1408-09. Such measures, the Court explained, could "help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences." *Id.*

of the evidence presented," 28 U.S.C. § 2254(d)(2). Nor has he rebutted this determination "by clear and convincing evidence." *Id.* at 2254(e)(1). Under the deferential standard AEDPA requires, we are unable to disrupt the state court's finding that it is not reasonably probable that such a plea would have been entered here.

## V.

For the reasons set forth above, the judgment of the district court is

*REVERSED*.