**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-6465**

SHANE MONROE DODSON,

    Petitioner - Appellant,

  v.

DAVID BALLARD, Warden,

    Respondent - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  Frederick P. Stamp, Jr., Senior District Judge.  (5:16-cv-00150-FPS)

Argued:  October 31, 2019       Decided:  January 22, 2020

Before KEENAN, FLOYD, and RICHARDSON, Circuit Judges.

Vacated and remanded with instructions by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Floyd and Judge Richardson joined.

**ARGUED:**  Lyle David Kossis, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant.  Lindsay Sara See, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee. **ON BRIEF:** Brian D. Schmalzbach, Michael W. Stark, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant.  Patrick Morrisey, Attorney General, Zachary A. Viglianco, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Shane Monroe Dodson appeals from the district court's judgment denying his petition for habeas corpus relief brought under 28 U.S.C. § 2254, in which he raised a single claim of ineffective assistance of counsel. Dodson argues on appeal that the district court erroneously adopted factual findings made by the Supreme Court of Appeals of West Virginia (the state supreme court), which were directly contrary to the findings made by the state circuit court reviewing his initial habeas petition (the state habeas court, or the habeas court). As found by the state habeas court, Dodson argues that his counsel misadvised him during the plea negotiating process, because counsel was unaware of the elements of the burglary offense of which Dodson was convicted. Dodson asserts that based on his counsel's misunderstanding of the law, counsel advised Dodson not to plead guilty and to decline the State of West Virginia's offer to recommend as part of a plea bargain a sentence of one to ten years' imprisonment. After declining the state's plea offer, Dodson was convicted at trial and sentenced to serve a mandatory term of life imprisonment.

Dodson later filed a petition for habeas corpus relief in the state habeas court. That court granted the petition, holding under the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), that Dodson had been denied the effective assistance of counsel. On appeal, the state supreme court reversed the habeas court's judgment, concluding that Dodson's decision to reject the state's plea offer was not based on counsel's advice but was motivated instead by Dodson's belief that he would be exonerated at trial. After Dodson filed the present federal habeas petition, the district court deferred to the state supreme

3

court's decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), and denied Dodson's request for habeas corpus relief.

Upon our review, we hold that the state supreme court unreasonably construed the factual record, which led to its unreasonable application of federal law articulated in *Strickland*. Accordingly, we hold that AEDPA deference does not apply to our review in this appeal. *See* 28 U.S.C. 2254(d). Applying de novo review, we further hold that Dodson is entitled to habeas corpus relief.

## I.

The underlying offense arose from an altercation at the home of Dodson's former girlfriend, Brittany Carrigan. According to Carrigan's initial account, Dodson arrived at her home, knocked, and then opened the front door without permission. Carrigan stated that although she attempted to close the door, Dodson pushed the door open and hit Carrigan several times. Carrigan later changed her statement and told police that she wanted to drop all charges against Dodson, asserting that she had invited him to her home.

After Dodson was arrested and charged with felony burglary and misdemeanor domestic battery under West Virginia law, he retained Sherman Lambert as his attorney. Before trial, the state made Dodson a plea offer. Under that offer, in exchange for Dodson's agreement to plead guilty, the prosecutor agreed to recommend to the court a sentence of one to ten years' imprisonment on the burglary charge and one year of incarceration on the domestic battery charge. This offer was based on the state's further agreement not to seek the mandatory sentence of life imprisonment applicable to recidivists such as Dodson, who

4

had two or more previous felony convictions.  W. Va. Code § 61-11-18(c) (persons who have been convicted of two prior "crime[s] punishable by confinement in a penitentiary" are subject to mandatory life imprisonment).  Dodson rejected the state's plea offer and proceeded to trial.

At trial, the state presented testimony from three witnesses who saw Dodson arrive at Carrigan's home, bang on the door while threatening to harm Carrigan if she did not open the door, and ultimately enter the home.  These witnesses later heard screaming coming from inside the home.  Those witnesses, as well an officer who responded to the incident, observed Carrigan's injuries after the altercation.

Dodson presented Carrigan as his only witness.  Carrigan recanted her original statement, testifying that she and Dodson had been arguing on the day of the incident but that the argument had not escalated to a physical altercation.  The state also presented testimony from Carrigan's mother, who stated that Carrigan told her that she was planning to lie in court so that Dodson would not receive a life sentence.

Despite Carrigan's recantation, the jury convicted Dodson of felony "daytime burglary," a lesser-included offense of statutory burglary, and misdemeanor domestic battery.  Based on Dodson's prior felony convictions, the state circuit court sentenced Dodson to a mandatory term of life imprisonment for the felony "daytime burglary" conviction and to an additional one year of imprisonment for the misdemeanor domestic battery conviction.  W. Va. Code § 61-11-18(c).

After the state supreme court rejected his direct appeal, Dodson filed a petition seeking habeas corpus relief in the state habeas court.  Dodson argued that he received

5

ineffective assistance of counsel when Lambert advised him not to accept the state's plea offer. Dodson contended that Lambert mistakenly believed that Dodson could not be convicted of any form of statutory burglary, including the lesser-included offense of "daytime burglary," in the absence of evidence of a breaking.

The West Virginia offense of statutory burglary, if committed during the daytime, ordinarily requires a breaking and entering. W. Va. Code § 61-3-11(a) (1993)[1] (burglary occurs when a "person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house . . . of another, with intent to commit a crime therein"). Notably, however, this burglary statute also contains the lesser-included felony offense of "daytime burglary," which may be committed without a breaking. *Id.* § 61-3-11(b) (the offense known as "daytime burglary" occurs when a "person shall, in the daytime, enter without breaking a dwelling house . . . of another, with intent to commit a crime therein").

The same judge before whom Dodson was tried held an evidentiary hearing in the state habeas proceeding. Dodson, his mother, and Lambert testified at the hearing. Dodson testified that Lambert advised him that he could not be convicted of burglary because he had not "broken" into Carrigan's home. Dodson stated that although Lambert informed him of the state's plea offer, Lambert also told him that "we're not even going to consider a plea bargain." Dodson's mother testified that she met with Lambert every few weeks, and that Lambert told her that there was "no possibl[e] way that they can plead [sic] him

---

[1] When we refer to a prior version of a statute, that version was the statute in effect at the time of Dodson's trial.

6

guilty." Ultimately, Dodson testified that he relied upon Lambert's advice in rejecting the state's offer.

In contrast, Lambert testified that Dodson chose to reject the state's plea offer against Lambert's advice, because Dodson thought that Carrigan's recantation at trial would exonerate him. In direct opposition to Dodson's testimony, Lambert testified that "[n]ot only did I explain the elements of burglary but we talked about all the lesser included offenses." Lambert also testified that he told Dodson that the state's plea offer was "very lenient," and that he advised Dodson "[m]any times" to consider accepting the offer.

In addition to this testimony at the habeas hearing, the state habeas court reviewed the trial record. Most notably, before receiving his sentence of life imprisonment, Dodson had stated to the court: "I am getting life for [a] burglary that I did not commit. There is no door jam broken. There is no window broken. The alleged victim let me in the house." The state habeas court concluded that this statement by Dodson reflected "an inaccurate understanding" of the elements of "daytime burglary" under West Virginia law.

The state habeas court also considered Lambert's opening statement at trial, in which he stated that Dodson was "charged with burglary, breaking and entering. It was by invitation." The state habeas court observed that this statement by counsel overlooked the lesser-included felony offense of "daytime burglary," which does not require a breaking. According to the state habeas court, Dodson's and Lambert's statements "belie[] Mr. Lambert's claims" that he encouraged Dodson to accept the state's plea offer. The state habeas court also credited the balance of Dodson's testimony, finding that Lambert had

failed to advise Dodson of the elements of "daytime burglary" and that Lambert "potentially" had not understood the elements himself.

The state habeas court granted Dodson's request for habeas corpus relief. Applying *Strickland*, the court found that Lambert's failure to advise Dodson properly of the elements of the lesser-included offense constituted deficient performance, and that Dodson would have accepted the state's plea offer and pleaded guilty had he been properly advised. Accordingly, the state habeas court ordered the state to reinstate its original plea offer to Dodson.

On appeal, the state supreme court reversed the state habeas court's judgment. Concluding that the habeas court had not made "explicit credibility assessments," the state supreme court did not defer to the habeas court's factual findings. The state supreme court further explained that "[h]ad the [habeas court] made credibility determinations, [the state supreme court] would have afforded [the habeas court] great deference because [it] had the opportunity to view the witnesses."

The state supreme court thereafter conducted a de novo review and held that Lambert's performance during the plea-bargaining process was not deficient. The state supreme court criticized the habeas court for considering statements Lambert made at trial, which the state supreme court characterized as an improper evaluation of counsel's performance "through the lens of hindsight." The state supreme court further concluded that the testimony of Dodson and his mother was "insufficiently corroborated by independent, objective evidence." Because the state supreme court held that Dodson failed to show deficient performance by counsel, the court declined to address whether Dodson

8

had met the prejudice requirement of *Strickland*. The state supreme court reversed the habeas court's decision and directed the habeas court to dismiss Dodson's habeas corpus petition.

Dodson later filed a petition for habeas corpus relief in the district court under 28 U.S.C. § 2254, advancing a single claim of ineffective assistance of counsel during the plea-bargaining process. The case was referred to a magistrate judge, who issued a report recommending that the district court grant Dodson's petition. The district court declined to adopt the magistrate judge's recommendation.

The district court held that the state supreme court's factual determination, namely, that the state habeas court did not make any explicit credibility assessments, was not unreasonable. The district court further concluded that the state supreme court had not unreasonably applied federal law. Accordingly, citing AEDPA, the district court deferred to the state supreme court's decision and dismissed Dodson's petition. We granted Dodson a certificate of appealability, and now consider his appeal from the district court's judgment.

II.

Dodson argues that the district court erred in deferring to the state supreme court's decision, because Dodson established that the state supreme court's conclusion was not entitled to AEDPA deference under 28 U.S.C. § 2254(d). Thus, according to Dodson, we may consider his habeas corpus petition under a de novo standard of review allowing us to assign significant weight to the state habeas court's credibility findings.

9

In response, the state argues that the state supreme court's decision denying habeas corpus relief properly was afforded great deference by the district court in accordance with AEDPA, because the state supreme court's factual determinations were not unreasonable and did not result in an unreasonable application of federal law. We disagree with the state's arguments.

A.

When "assessing a state prisoner's habeas claims, we review the 'last reasoned' state court decision." *LeBlanc v. Mathena*, 841 F.3d 256, 263 (4th Cir. 2016), *rev'd on other grounds*, *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017); *see also Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 525-27 (4th Cir. 2016). Here, the last reasoned state court decision is the decision of the state supreme court.

Our review ordinarily is constrained by AEDPA, which limits a federal court's ability to grant habeas corpus relief to state prisoners. Under AEDPA, federal courts may not grant relief on a habeas claim that has been adjudicated on the merits in a state court proceeding unless the state court's determination "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2), or "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" *id.* § 2254(d)(1).

For a state court's factual determination to be held unreasonable under Section 2254(d)(2), "[the determination] must be more than merely incorrect or erroneous." *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). The state court's

10

finding must be "sufficiently against the weight of the evidence that it is objectively unreasonable." *Id.* (citation omitted). AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct" absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). These provisions of AEDPA, "operating in tandem," require that a petitioner seeking relief under Section 2254(d)(2) establish that the state court's factual finding was "incorrect by clear and convincing evidence, and that the corresponding factual determination was objectively unreasonable in light of the record before the court." *Merzbacher v. Shearin*, 706 F.3d 356, 364 (4th Cir. 2013) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (internal quotation marks omitted)).

A state court's decision constitutes an unreasonable application of clearly established federal law under Section 2254(d)(1) when the state court correctly identifies the "governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case."[2] *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted). In making this assessment, "we look to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." *Id.* at 238-39 (citation omitted).

Although a petitioner's burden is heavy, deference to the state court's decision "does not imply abandonment or abdication of judicial review [and] does not by definition

---

[2] Only holdings of the Supreme Court issued by the time of the relevant state court decision, and not circuit precedent, can form the basis for habeas relief under Section 2254(d)(1). *See Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Barnes v. Joyner*, 751 F.3d 229, 239 (4th Cir. 2014).

11

preclude relief." *Miller-El*, 537 U.S. at 340. If the petitioner shows that the state court's adjudication of a claim is dependent on an unreasonable determination of fact or an unreasonable application of federal law, we do not defer to the state court's decision but instead review the claim de novo. *See Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007) (declining to apply AEDPA deference when the petitioner has satisfied Section 2254(d)(1)); *Magnan v. Trammell*, 719 F.3d 1159, 1175 (10th Cir. 2013) (declining to apply AEDPA deference when the petitioner has satisfied Section 2254(d)(2)); *Cooper v. Sec'y, Dep't of Corr.*, 646 F.3d 1328, 1353 (11th Cir. 2011) (same); *Rice v. White*, 660 F.3d 242, 252 & n.4, 257 (6th Cir. 2011) (same).

When a habeas petitioner alleges ineffective assistance of counsel, we review the claim not only through the deferential requirements of AEDPA but also through the additional deferential lens of *Strickland*. *See Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012). AEDPA and *Strickland* provide "dual and overlapping" standards, which we apply "simultaneously rather than sequentially." *Id.*

Under *Strickland*, a petitioner "must show that counsel's performance was deficient," and that the petitioner suffered resulting prejudice. 466 U.S. at 687. The reviewing court's "scrutiny of counsel's performance must be highly deferential," and "every effort" must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

To prove deficient performance of counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Counsel's

12

"ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance." *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017) (quoting *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (per curiam)); *see also Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring in the judgment) ("The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis . . . ."). "Counsel must demonstrate a basic level of competence regarding the proper legal analysis governing each stage of a case." *Carthorne*, 878 F.3d at 466; *see also Byrd v. Skipper*, 940 F.3d 248, 257 (6th Cir. 2019) (holding that defense counsel's "lack of comprehension regarding the pertinent law . . . coupled with the inaccurate advice he gave his client about the likelihood of his acquittal" was deficient performance). The guarantee of effective assistance of counsel extends to the plea-bargaining process. *See Missouri v. Frye*, 566 U.S. 134, 140-44 (2012); *see also Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Hill*, 474 U.S. at 57-58.

To satisfy the prejudice prong of *Strickland* in the context of a rejected plea offer, a petitioner must demonstrate that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Thus, a petitioner under these circumstances must establish "that but for the ineffective advice of counsel there is a reasonable probability that" the petitioner would have pleaded guilty, that the court would have accepted the plea agreement, and "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164.

13

B.

We first consider whether AEDPA deference restricts the scope of our present analysis. We conclude that AEDPA deference does not apply because the state supreme court committed two foundational errors, namely, that the court (1) made an unreasonable factual determination, which led to (2) its unreasonable application of federal law. *See* 28 U.S.C. § 2254(d). We discuss each deficiency in turn.

We begin with the factual error. The state supreme court's determination regarding the habeas court's findings is an issue of historical fact.[3] *See Parker v. Dugger*, 498 U.S. 308, 320 (1991) (holding "that a determination of what the trial judge found is an issue of historical fact"). Here, the state supreme court's crucial factual determination was that the habeas court did not make any "credibility determinations" in awarding Dodson habeas corpus relief. That conclusion, however, is plainly refuted by the record.

The primary evidence presented at the state habeas hearing was the testimony of three witnesses. Dodson and his mother gave testimony that directly conflicted with Lambert's testimony. After evaluating these "conflicting assertions" regarding whether Lambert properly advised Dodson, the state habeas court found that Lambert's opening statement at trial and Dodson's statement at sentencing, as well as the testimony of Dodson and his mother at the habeas hearing, "belie[] Mr. Lambert's claims." The state habeas

---

[3] The state waived any argument that the state supreme court misapplied a state procedural rule when the court held that the habeas court's findings were not credibility assessments and thus were not worthy of deference. Such a misapplication would not be cognizable on federal habeas review. *See Shimel v. Warren*, 838 F.3d 685, 697 (6th Cir. 2016).

14

court also found that "it is unbelievable that [Dodson's] previous pattern of risk adverse plea bargaining would suddenly change" absent advice from his attorney.

Although the state habeas court did not label its findings as credibility determinations, the court plainly resolved the issue of the credibility of the competing witnesses in arriving at its conclusion. *See Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983) (holding that the state trial court's ruling was "tantamount" to a credibility determination). The habeas court accepted the version of events described by Dodson and his mother, namely, that Lambert gave his client erroneous advice regarding the elements of the offense, over Lambert's account of the events. The state habeas court also explicitly found that Lambert had failed to advise Dodson of the elements of "daytime burglary," contrary to the testimony that Lambert gave at the habeas hearing. In view of this record, we conclude that Dodson has shown by clear and convincing evidence that the state supreme court's factual finding, that the habeas court did not make credibility determinations, was incorrect, *see Merzbacher*, 706 F.3d at 364, and was "sufficiently against the weight of the evidence that it is objectively unreasonable," *Williams*, 914 F.3d at 312 (citation omitted).

The state supreme court's "corresponding factual determination" not to defer to the habeas court's findings was objectively unreasonable. *See Merzbacher*, 706 F.3d at 364 (citation omitted). The unreasonable nature of this determination is underscored by the state supreme court's definitive acknowledgement that if the habeas court had made credibility determinations, the state supreme court "would have afforded [the habeas court] great deference because [the habeas court] had the opportunity to view the witnesses."

15

Thus, we conclude that the state supreme court's ultimate decision regarding the credibility of the witnesses was based on an antecedent unreasonable determination of fact. *See* 28 U.S.C. § 2254(d)(2).

This factual error laid the groundwork for the state supreme court's unreasonable application of federal law articulated in *Strickland. See* 28 U.S.C. § 2254(d)(1). *Strickland* instructs habeas courts to make "every effort . . . to eliminate the distorting effects of hindsight" when assessing an attorney's performance. 466 U.S. at 689. That is, courts may not evaluate counsel's performance in the context of what later is known about the outcome of that performance, which may be affected by changes in the law or evidence developed after counsel rendered his advice. *See Harrington v. Richter*, 562 U.S. 86, 107 (2011) (holding that the lower court improperly relied on "the harsh light of hindsight" in faulting trial counsel for failing to consult certain experts, when the value of such testimony became apparent only upon discovery of new forensic evidence) (citation omitted); *United States v. Morris*, 917 F.3d 818, 823-24 (4th Cir. 2019) (holding that counsel's performance was not deficient for "failing to raise novel arguments" when the existing precedent did not "strongly suggest" that the arguments were warranted).

Here, the state habeas court considered statements made at trial and at sentencing in evaluating whether Lambert properly advised Dodson about the elements of the lesser-included offense. The habeas court, having presided over the trial and sentencing, witnessed firsthand the statements made by Lambert and Dodson during those proceedings. These statements could be considered during the habeas proceeding as contemporaneous evidence corroborating Lambert's and Dodson's states of mind at the time of the trial. *See*

16

*Carthorne*, 878 F.3d at 461-62, 468-69 (considering counsel's "colloquy with the [sentencing] court" to conclude in a collateral action that counsel failed "to demonstrate a grasp of the relevant legal standards").

The state supreme court misapplied *Strickland* when it characterized the habeas court as having improperly evaluated counsel's performance "through the lens of hindsight," thereby discrediting the state habeas court's analysis. The statements during the trial and sentencing proceedings made by Lambert and Dodson, which the habeas court referred to in its opinion granting habeas relief, were "objective evidence" of counsel's deficient performance and did not constitute improper hindsight evidence based on later-occurring facts. Accordingly, we hold that the state supreme court's conclusion that the habeas court had evaluated counsel's performance through the lens of hindsight was an unreasonable application of *Strickland*. Because the state supreme court's decision was based on an unreasonable determination of fact, which led to this unreasonable application of federal law, our review is not barred by AEDPA. *See* 28 U.S.C. § 2254(d).

III.

Upon concluding that AEDPA deference is inapplicable, we now examine Dodson's ineffective assistance of counsel claim de novo. *See Panetti*, 551 U.S. at 953-54; *Magnan*, 719 F.3d at 1175. As the state habeas court was able to observe the demeanor of Dodson and Lambert, both during the trial proceedings and at the habeas hearing, we defer to that court's factual findings. *See Merzbacher*, 706 F.3d at 364; *see also* 28 U.S.C. § 2254(e)(1).

17

As discussed above, under *Strickland*, a petitioner must show that counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687. Adequate performance requires that counsel advise his client accurately about the elements of the offenses of which he could be convicted. *See Hill*, 474 U.S. at 62 (White, J., concurring in the judgment) ("The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis . . . ."); *Carthorne*, 878 F.3d at 466 (holding that "[c]ounsel's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance." (citation omitted)).

Here, Lambert misunderstood or misrepresented the elements of the lesser-included felony offense of daytime burglary and improperly advised Dodson not to accept the state's offer. Lambert told the jury that Dodson could not be guilty of burglary, because Carrigan had invited Dodson to her home. Dodson testified that Lambert never explained that Dodson could be convicted of the lesser-included felony of "daytime burglary" even if he had been allowed to enter Carrigan's home. The elements of that offense, however, merely require that a defendant (1) enter the dwelling of another (2) with the intent to commit a crime. *See* W. Va. Code § 61-3-11(b) (1993). Based on Lambert's deficient advice, which reflected his lack of knowledge of the pertinent law, we conclude that Lambert's performance was constitutionally inadequate.[4]

---

[4] In addition, Lambert misunderstood the elements of domestic battery. Lambert moved to dismiss the domestic battery charge, because Dodson was not a "household member of the Carrigan family." However, as the state circuit court explained when (Continued)

18

Turning to the second prong of *Strickland*, we conclude that Dodson suffered prejudice as a result of Lambert's deficient performance. As stated above, to satisfy the prejudice prong of *Strickland* in the context of a rejected guilty plea, a petitioner "must show that but for the ineffective advice of counsel, there is a reasonable probability that" the petitioner would have pleaded guilty, that the court would have accepted the plea agreement, and that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

Here, first and foremost, Dodson testified at the habeas hearing that absent Lambert's ineffective advice, Dodson would have accepted the state's offer, and the state habeas court credited this testimony. The evidence at the habeas hearing also showed that Dodson had a long history of entering into plea agreements, having pleaded guilty to all three of his prior felony offenses. Additionally, Dodson had accepted a plea agreement in an earlier case, avoiding a sentence of life imprisonment as a recidivist. Although Dodson had tried to withdraw that guilty plea on the advice of counsel, such conduct is further evidence of Dodson's general reliance on his attorneys' advice. Thus, nothing in the present record suggests that Dodson would have departed from this uniform path of accepting favorable plea offers but for advice of counsel.

---

denying the motion, the statute broadly defines "household member" to include persons who "[a]re or were dating" or "[a]re or were sexual or intimate partners[,]" which Dodson and Carrigan were. W. Va. Code §§ 61-2-28(e) (2004); 48-27-204(3), (4). Although Dodson was not prejudiced by the sentence he received for this misdemeanor domestic battery conviction, this additional error supports the conclusion that Lambert did not know the elements of the offenses with which Dodson was charged.

19

As part of its plea offer in the present burglary case, the state agreed to recommend to the court a sentence of one to ten years' imprisonment, in extreme contrast to the mandatory life sentence that Dodson received after trial. Thus, Dodson would have obtained a substantial benefit by accepting the state's plea offer and pleading guilty. Accordingly, we conclude that based on Dodson's history of accepting plea offers and the severe sentencing disparity he faced by proceeding to trial, Dodson has established a reasonable probability that he would have accepted the state's offer and pleaded guilty had Lambert not rendered constitutionally deficient performance.

In sum, we conclude that Lambert rendered deficient performance when he misadvised Dodson about the elements of the statutory burglary offense and the strength of Dodson's case, and that Dodson suffered prejudice in relying on counsel's advice to reject the state's plea offer. Therefore, we hold that Dodson received constitutionally ineffective assistance of counsel and is entitled to habeas corpus relief.

IV.

For these reasons, we vacate the district court's judgment, and remand the case to the district court with instructions to grant conditionally Dodson's petition for habeas corpus under 28 U.S.C. § 2254. The district court is directed to inform the State of West Virginia that it will be afforded 90 days to decide whether to reinstate its previous plea offer to Dodson in exchange for his guilty plea. *See Lafler*, 566 U.S. at 174. If the state declines to reinstate its previous plea offer, the district court shall grant Dodson's petition for habeas corpus relief. *See Lee v. Clarke*, 781 F.3d 114, 129 (4th Cir. 2015).

20

*VACATED AND REMANDED WITH INSTRUCTIONS*