**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-6515

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOLON DEVON CARTHORNE, SR.,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., District Judge. (1:10-cr-00096-WO-1; 1:14-cv-00447-WO-LPA)

Argued: October 24, 2017                     Decided: December 21, 2017

Before MOTZ, KEENAN, and THACKER, Circuit Judges.

Vacated and remanded by published opinion. Judge Keenan wrote the opinion, in which Judge Motz and Judge Thacker joined.

**ARGUED:** Katherine Grace Mims Crocker, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. Anand P. Ramaswamy, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Benjamin L. Hatch, MCGUIREWOODS LLP, Norfolk, Virginia, for Appellant. Sandra J. Hairston, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider the district court's dismissal of a motion for post-conviction relief under 28 U.S.C. § 2255. We decide whether our decision on direct appeal, that a sentencing court did not plainly err in designating a defendant as a "career offender," requires a conclusion on collateral review that trial counsel did not render ineffective assistance by failing to object to that designation. Upon our review, we conclude that the standards for plain error and ineffective assistance of counsel are distinct and do not necessarily result in equivalent outcomes for the defendant. Under the circumstances presented here, we hold that the defendant's trial counsel rendered ineffective assistance by failing to understand the required legal analysis, and by failing to make an obvious objection to the career offender designation. These failures by counsel resulted in prejudice to the defendant by increasing his sentence by more than seven years' imprisonment. We therefore vacate the defendant's sentence, and remand the case to the district court for resentencing.

## I.

### A.

In June 2010, Jolon Devon Carthorne, Sr. entered a guilty plea to possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). In the presentence report (PSR), the probation officer recommended designating Carthorne as a career offender under the United States Sentencing Guidelines

2

(Guidelines) Section 4B1.1. The recommendation was based on Carthorne's two prior convictions, including the one conviction at issue here for Virginia assault and battery of a police officer (ABPO), in violation of Virginia Code § 18.2-57(C).[1] The probation officer concluded that ABPO qualified as a "crime of violence" under Section 4B1.2(a) of the Guidelines, thereby qualifying Carthorne for the career offender enhancement. The ABPO offense, committed in 2002, occurred as a result of Carthorne spitting in the face of a police officer without further altercation. *United States v. Carthorne*, 726 F.3d 503, 508 (4th Cir. 2013) (*Carthorne I*).

Applying the career offender enhancement, the probation officer set Carthorne's Guidelines range at between 322 and 387 months' imprisonment. Carthorne's retained trial counsel did not object to the career offender designation, or argue more specifically that ABPO failed to qualify as a predicate offense. Nonetheless, during the sentencing hearing, the district court engaged in the following colloquy with Carthorne's counsel:

> THE COURT: Let me ask you two things, Mr. Johnson. First of all, what should I—conclusions, if any, should I reach over these—this spitting on law enforcement officers conduct?
>
> MR. JOHNSON: Judge, I have labored over that case long, looked and researched for a long time trying to develop and asking providence for a lucky break. I'm not a good lawyer. Sometimes I just like to be lucky if I

---

[1] The ABPO statute provides in relevant part as follows:

[I]f any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . a law-enforcement officer . . . such person is guilty of a Class 6 felony, and, upon conviction, the sentence of such person shall include a mandatory minimum term of confinement of six months.

Va. Code § 18.2-57(C).

3

could [sic], and I would like to have been lucky to have found a case that says spitting on an officer is not an assault. Notwithstanding the fact that he plead [sic] guilty, was sentenced to it, notwithstanding the fact that the facts of it are the officer is just walking down the street saying "what's up," you say "what's up," and you spit back on the officer. I'd like to take an argument and say, well, he didn't strike the officer. He didn't hurt him. There was no violence. But right now I think the categorical approach that the—as I understand it, the Supreme Court and the Fourth Circuit has taken would render such an argument—

THE COURT: Without merit.

MR. JOHNSON: Yes, Your Honor. So I would rather argue, Judge, that he was just a fool.

The district court adopted the probation officer's recommendation that the ABPO conviction qualified as a predicate crime of violence under Section 4B1.2(a) of the Guidelines. The court designated Carthorne as a career offender, but varied downward 22 months below the Guidelines range and imposed a sentence of 300 months' imprisonment.

If the district court had not held that the ABPO conviction qualified as a crime of violence, Carthorne would not have satisfied the conditions for career offender status and his Guidelines range would have been between 181 and 211 months' imprisonment. *Carthorne I*, 726 F.3d at 508. The top of that range was almost seven and one-half years less than the 300-month sentence imposed by the district court.

B.

Carthorne appealed from the district court's judgment in 2013. He argued that the court erred in determining that he was a career offender, because ABPO was not a crime of violence within the meaning of Section 4B1.2(a). We reviewed this claim for "plain error," because the objection was not raised at sentencing. *Id.* at 515–17. We applied the

version of the Guidelines in effect at the time of sentencing, which defined a crime of violence as any state or federal offense punishable by imprisonment for a term exceeding one year that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another [the force clause], or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives [the enumerated crimes clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the residual clause].[2]

U.S.S.G. § 4B1.2(a).

In our decision, we explained that under Virginia law, ABPO could be committed with the "slightest touching" of a police officer. *Carthorne I*, 726 F.3d at 512–13 (citing, for instance, *Crosswhite v. Barnes*, 124 S.E. 242, 244 (Va. 1924)). We held that ABPO therefore did not qualify categorically as a crime of violence under the force clause, because the crime did not include as an element the use of physical force. *Id.* at 513–15 (relying in part on *Johnson v. United States*, 559 U.S. 133, 139–42 (2010)). We also concluded that ABPO did not qualify as a crime of violence under the residual clause, because ABPO did not present a serious potential risk of injury in the ordinary case. *Id.*

Nevertheless, we held that the district court did not plainly err in applying the career offender enhancement, because existing precedent did not require a conclusion that ABPO did not qualify as a crime of violence under the residual clause. *Id.* at 516. We further observed that at the time of Carthorne's appeal, there was a circuit split on the issue whether

---

[2] Since Carthorne's sentencing, the career offender guideline has been amended, and the residual clause has been replaced by different language not relevant here. In this opinion, we refer to the version of Section 4B1.2 in effect at the time of Carthorne's sentencing.

5

crimes involving an assault and battery of a law enforcement officer qualified under the residual clause. *Id.* at 516–17. *Compare Rozier v. United States*, 701 F.3d 681, 682 (11th Cir. 2012) (holding that battery against a law enforcement officer was a crime of violence under residual clause), *United States v. Dancy*, 640 F.3d 455, 470 (1st Cir. 2011) (same), *and United States v. Williams*, 559 F.3d 1143, 1149 (10th Cir. 2009) (same), *with United States v. Hampton*, 675 F.3d 720, 731 (7th Cir. 2012) (holding that making provocative physical contact with a law enforcement officer was not a crime of a violence under residual clause). Accordingly, we held that the district court did not plainly err at sentencing, and we affirmed the court's judgment. *Carthorne I*, 726 F.3d at 516–17.

## C.

In May 2014, Carthorne timely filed in the district court a motion to vacate his sentence under 28 U.S.C. § 2255. Carthorne asserted that, by failing to object at sentencing to his classification as a career offender based on the ABPO conviction, his counsel rendered ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984) (holding that a claim of ineffective assistance of counsel must satisfy both a "performance prong" and a "prejudice prong"). The magistrate judge recommended that the district court deny the requested relief. The magistrate judge acknowledged that counsel's alleged error satisfied the prejudice prong of *Strickland* because, if Carthorne's attorney had challenged the ABPO predicate offense, this Court would have remanded for resentencing with a lower Guidelines range. However, the magistrate judge concluded that Carthorne did not satisfy the performance prong of *Strickland* "essentially for the same reasons that the Fourth Circuit found no plain (i.e., obvious) error on direct appeal."

6

Over Carthorne's objection, the district court adopted the magistrate judge's recommendation and denied Carthorne's Section 2255 motion. We granted a certificate of appealability on this issue pursuant to Federal Rule of Appellate Procedure 22(b)(1), and now turn to address the merits of Carthorne's Section 2255 motion.

## II.

Carthorne argues that the district court erred in concluding that the absence of plain error on direct appeal constituted a basis for denial of relief on collateral review for ineffective assistance of counsel. According to Carthorne, the district court conflated the two standards of review, and failed to examine the particular duties owed by an attorney to his client. Carthorne contends that his attorney's deficient performance in failing to object to the career offender designation resulted in prejudice entitling Carthorne to be resentenced.

In response, the government contends that any error by counsel was not obvious because, at the time of Carthorne's sentencing, precedent was unsettled regarding whether ABPO qualified categorically as a crime of violence. Accordingly, the government agrees with the district court's assessment that Carthorne did not receive ineffective assistance of counsel. We disagree with the government's position.

## A.

We review de novo a district court's legal conclusions in denying a Section 2255 motion. *United States v. Stitt*, 552 F.3d 345, 350 (4th Cir. 2008). We first consider the

7

question of law whether application of the plain error standard and the ineffective assistance of counsel standard ordinarily requires equivalent outcomes.

Both the plain error standard and the ineffective assistance of counsel standard assess the effect of alleged errors committed during proceedings in the trial court. When a defendant's lawyer is confronted with error during a judicial proceeding, he has the responsibility to object contemporaneously, calling the question to the court's attention and preserving the issue for appellate review. *See Puckett v. United States*, 556 U.S. 129, 134 (2009); Fed. R. Crim. P. 51(b) (addressing contemporaneous objections by counsel). Our legal system relies on advocates' effective assistance to protect the trial process from error and to promote just outcomes for the parties at trial. *See Strickland*, 466 U.S. at 686–87.

If counsel fails to raise a contemporaneous objection to a potential issue or error, the authority of an appellate court to remedy that problem is "strictly circumscribed." *Puckett*, 556 U.S. at 134. A litigant failing to object to an error generally forfeits his claim to relief on account of that error. *Id*. at 134–35. Federal Rule of Criminal Procedure 52(b) recognizes only a limited exception to this rule of forfeiture, allowing appellate courts to review "a plain error that affects substantial rights." *See also Puckett*, 556 U.S. at 135; *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004) (noting plain error relief is "difficult to get, as it should be"). The plain error standard therefore reflects the view that the primary responsibility for protecting a defendant's interests at trial lies with his attorney, not with the court.

An error can be "plain" only on the basis of settled law. *See Carthorne I*, 726 F.3d at 516 & n.14 (noting that error is plain "if the settled law of the Supreme Court or this

8

circuit establishes that an error has occurred" or if other circuits are unanimous on the point (citation omitted)). When neither the Supreme Court nor this Court has addressed a legal issue directly and a circuit split exists, "a district court does not commit plain error by following the reasoning of another circuit." *United States v. Strieper*, 666 F.3d 288, 295 (4th Cir. 2012); *Carthorne I*, 726 F.3d at 516–17 (holding that the absence of binding precedent in conjunction with disagreement among circuits prevented us from finding plain error). Moreover, the determination whether an error is plain is made at the time of review by an appellate court, not at the time that the error is committed. *Henderson v. United States*, 568 U.S. 266, 279 (2013).

While a federal procedural rule sets forth the plain error standard, the Constitution guarantees effective assistance of counsel in criminal cases. U.S. Const. amend. VI; *Strickland*, 466 U.S. at 685 ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause."). The Sixth Amendment guarantees the defendant in a criminal case the right to effective assistance of counsel to help ensure that our adversarial system produces just results. *Strickland*, 466 U.S. at 685. Consequently, the Sixth Amendment requires that "counsel act[] in the role of an advocate." *United States v. Cronic*, 466 U.S. 648, 656 (1984). A finding of ineffective assistance ultimately will result when counsel's conduct "so undermined the proper functioning of the adversarial process" that the proceedings below "cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

9

As noted above, to succeed on a claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness (the performance prong); and (2) the deficient representation prejudiced the defendant (the prejudice prong). *Id.* at 687–88. The performance prong is satisfied when counsel provides reasonably effective assistance, including demonstrating legal competence, doing relevant research, and raising important issues. *See id.* at 687–90; *Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012); *Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015). A court typically evaluates claims of ineffective assistance of counsel on collateral review, *see United States v. Ford*, 88 F.3d 1350, 1363 (4th Cir. 1996), and "judicial scrutiny of counsel's performance must be highly deferential," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citation and alteration omitted). However, our review does not countenance "omissions [that] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Competent performance is evaluated by reference to the reasonableness of counsel's decisions under "professional norms." *Padilla v. Kentucky*, 559 U.S. 356, 366–67 (2010).

Given their different origins, the plain error standard and the ineffective assistance standard serve different, yet complementary, purposes. *See United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994) ("[T]here is a natural analogy between the assertion of 'plain error' and the assertion of ineffective assistance of counsel."). Plain error review by appellate courts is used "to correct only particularly egregious errors" by a trial court. *United States v. Dowell*, 388 F.3d 254, 256 (7th Cir. 2004) (citation omitted). By comparison, the ineffective assistance inquiry on collateral review does not involve the

correction of an error by the district court, but focuses more broadly on the duty of counsel to raise critical issues for that court's consideration.

Although both the plain error standard and the ineffective assistance of counsel standard require a showing of prejudice, the inquiries are not identical. *See Saro*, 24 F.3d at 287. The ineffective assistance inquiry focuses on a factor that is not considered in a plain error analysis, namely, the objective reasonableness of counsel's performance. *Strickland*, 466 U.S. at 687. In addition, plain error review requires that there be settled precedent before a defendant may be granted relief, *Strieper*, 666 F.3d at 295, while the ineffective assistance standard may require that counsel raise material issues even in the absence of decisive precedent, *see Ramirez*, 799 F.3d at 855.

There is also a temporal distinction in the analysis performed under the two types of review. Claims of ineffective assistance are evaluated in light of the available authority at the time of counsel's allegedly deficient performance. *Winston*, 683 F.3d at 504 (noting that claims of ineffective assistance cannot be "based on hindsight"). But the plain error inquiry applies precedential authority existing at the time of appellate review. *Henderson*, 568 U.S. at 279. These differences, considered collectively, demonstrate why claims of ineffective assistance of counsel are not limited by an appellate court's analysis whether a trial court plainly erred.

As one circuit has observed, even when a district court has not committed plain error, counsel can have rendered ineffective assistance when counsel's errors "were the

11

result of a misunderstanding of the law."[3] *United States v. Span*, 75 F.3d 1383, 1389–90 (9th Cir. 1996) (holding that counsel's failure to raise an objection to jury instructions was ineffective assistance, even though district court's instructions were not plainly erroneous). Conversely, a finding of plain error does not always entail a finding of ineffective assistance of counsel. *See Gordon v. United States*, 518 F.3d 1291, 1300 (11th Cir. 2008) (holding that "strategic" reasons justified counsel's failure to object to a plain error and, therefore, counsel's performance was not ineffective). Thus, the plain error and ineffective assistance of counsel standards do not necessarily generate identical outcomes with respect to the same alleged error.

## B.

We turn to consider Carthorne's Section 2255 claim of ineffective assistance of counsel. As noted above, under *Strickland*'s performance prong, a defendant must demonstrate that counsel's performance was deficient with respect to prevailing professional norms or duties. 466 U.S. at 688. These duties include the duty to investigate and to research a client's case in a manner sufficient to support informed legal judgments. *Winston*, 683 F.3d at 504. Counsel's "ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance." *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014)

---

[3] The fact that an ineffective assistance of counsel claim may succeed even when a trial court has not committed plain error should not be understood to hold attorneys to a higher standard of legal proficiency than judges. *See Swanson v. United States*, 692 F.3d 708, 717 (7th Cir. 2012) (noting that "in some respects, plain error review may be less demanding" than ineffective assistance of counsel review).

(per curiam); *see also Williams v. Taylor*, 529 U.S. 362, 395 (2000) (holding that counsel provided ineffective assistance at sentencing because they failed to investigate records due to their mistaken understanding of state law on accessing such records).

Counsel must demonstrate a basic level of competence regarding the proper legal analysis governing each stage of a case. *See Hinton*, 134 S. Ct. at 1089 (holding that counsel rendered ineffective assistance by failing apparently to understand relevant law relating to expert testimony at trial). Under this standard, counsel may be constitutionally required to object when there is relevant authority strongly suggesting that a sentencing enhancement is not proper. *See Ramirez*, 799 F.3d at 855 ("An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance."); *United States v. Williamson*, 183 F.3d 458, 463 n.7 (5th Cir. 1999) ("[F]ailure to raise a discrete, purely legal issue, where the precedent could not be more pellucid and applicable, denies adequate representation."). Of course, counsel may have a strategic reason for not raising a particular objection but, in the absence of such a reason, the failure to raise an objection that would be apparent from a thorough investigation is a significant factor in evaluating counsel's performance. *See Strickland*, 466 U.S. at 690–91; *Wiggins v. Smith*, 539 U.S. 510, 526 (2003) (finding ineffective assistance when counsel's "failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment"); *Vinson v. True*, 436 F.3d 412, 419 (4th Cir. 2006) (noting that we do not regard a decision as "tactical . . . if it made no sense or was unreasonable").

At the time of Carthorne's sentencing, there was clear Supreme Court and Fourth Circuit precedent detailing the analytical framework for determining whether a crime qualifies as a predicate offense under Guidelines Section 4B1.2(a). After the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575 (1990), this Court recognized that the "categorical approach" is used to evaluate whether an offense constitutes a crime of violence within the meaning of Section 4B1.2(a). *See, e.g.*, *United States v. Pierce*, 278 F.3d 282, 286 (4th Cir. 2002) (observing that we use the categorical approach outlined in *Taylor* to assess a predicate offense), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008).

Under the categorical approach, courts consider the elements of the offense under controlling state law, rather than the particular facts of the offense in question, to determine whether that crime qualifies as a predicate offense under the Guidelines.[4] *See United States v. Harcum*, 587 F.3d 219, 222 (4th Cir. 2009) (explaining that under the categorical approach we analyze the offense "generically—that is, by relying solely on its essential elements, rather than on the particular underlying facts" (citation omitted)), *abrogated on other grounds by Descamps v. United States*, 570 U.S. 254 (2013). Thus, counsel's task under the categorical approach for purposes of Section 4B1.2(a) is to analyze whether the offense is *necessarily* a crime of violence, absent any consideration of the facts of the particular crime committed.

---

[4] We apply the same categorical approach to the definition of a "violent felony" under the Armed Career Criminal Act. *United States v. Vann*, 660 F.3d 453, 773 n.2 (4th Cir. 2011) (en banc).

14

When Carthorne was sentenced, the ABPO statute provided, in material part, that if any person (1) "commits an assault or an assault and battery against another" (2) "knowing or having reason to know that such other person is . . . a law enforcement officer" (3) "engaged in the performance of his public duties," he shall be guilty of a felony. Va. Code § 18.2-57(C); *Carthorne I*, 726 F.3d at 512. As we explained in *Carthorne I*, precedent from this Court and Virginia's appellate courts strongly suggested at the time that ABPO did not qualify as a crime of violence under Section 4B1.2(a). 726 F.3d at 513–15.

First, longstanding Virginia precedent clearly established that assault and battery can be accomplished with "the least touching." *See, e.g.*, *Pugsley v. Privette*, 263 S.E.2d 69, 74 (Va. 1980) ("[T]he slightest touching of another . . . if done in a rude, insolent or angry manner, constitutes a battery for which the law affords redress." (citation and quotation marks omitted)); *Jones v. Commonwealth*, 36 S.E.2d 571, 572 (Va. 1946) (noting that battery can consist of "the least touching of another's person"); *Hardy v. Commonwealth*, 58 Va. (17 Gratt.) 592, 601 (1867) (noting that assault and battery can result from "spitting in a man's face, or in any way touching him in anger, without lawful provocation"). Virginia common law assault and battery therefore does not categorically involve either "physical force," within the meaning of the force clause, or "a serious potential risk of physical injury," as contemplated under the residual clause as written at the time of Carthorne's sentencing. U.S.S.G. § 4B1.2(a). Because ABPO incorporates the elements of assault and battery at common law in Virginia, this precedent strongly suggested a conclusion that ABPO likewise did not qualify as a crime of violence. *See Carthorne I*, 726 F.3d at 512.

15

Second, this Court's precedent in *United States v. White*, decided more than one year before Carthorne's sentencing hearing, explained that assault and battery in Virginia may be accomplished with the "slightest touching." 606 F.3d 144, 148 (4th Cir. 2010), *abrogated on other grounds by United States v. Castleman*, 134 S. Ct. 1405, 1413 (2014); *see also Johnson*, 559 U.S. at 139–42 (holding that Florida battery was not a crime of violence under the force clause because even "slight" contact could constitute a battery). Relying on Virginia precedent, we made clear in *White* that Virginia common law assault and battery would not qualify as a crime of violence under the force clause. 606 F.3d at 153.

Although we had not directly addressed the question whether Virginia assault and battery qualified as a crime of violence under the residual clause at the time of Carthorne's sentencing, that clause requires that an offense present "a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). Before the time of Carthorne's sentencing, we already had explained that the residual clause requires a court to consider whether the offense, compared to the enumerated offenses in Section 4B1.2(a)(2), presents "immediate, serious, and foreseeable physical risks." *See United States v. Thornton*, 554 F.3d 443, 449 (4th Cir. 2009). The same Virginia precedent that we relied on in *White* strongly suggested that Virginia assault and battery does not categorically present serious risks of physical injury. *See Hardy*, 58 Va. (17 Gratt.) at 601 (holding that "spitting in a man's face" is enough for a battery). Thus, because ABPO is predicated on the common law offense, our

16

own precedent at the time of Carthorne's sentencing raised an obvious issue regarding whether ABPO qualified as a crime of violence under either clause of Section 4B1.2(a).[5]

Here, counsel demonstrated that he was not even aware of the analysis required by the categorical approach or its application in assessing predicate offenses for purposes of the career offender enhancement. As noted above, in his colloquy with the court, counsel explained: "I would like to have been lucky to have found a case that says spitting on an officer is not an assault." Counsel mentioned the "categorical approach," but apparently did not understand that the facts of the original "spitting" offense were irrelevant to the predicate offense inquiry. Moreover, contrary to the above-stated authority, counsel actually admitted that any argument that ABPO was not a crime of violence was "without merit."[6]

Counsel should have known that the above-stated precedent raised serious questions whether ABPO qualified as a crime of violence under the Guidelines, and that he had a

---

[5] The fact that we identified a circuit split and lack of binding authority in this Circuit in *Carthorne I* regarding ABPO's status under the residual clause does not change the fact that precedent in this Circuit strongly suggested that ABPO was not a crime of violence under the residual clause. Indeed, even if there was no precedential authority directly on point at the time, the clear import of existing precedent led us to decide in *Carthorne I* that ABPO is not a crime of violence under the residual clause. 726 F.3d at 513–15.

[6] We reject the government's argument that the colloquy between the sentencing court and counsel could have related to general sentencing factors under 18 U.S.C. § 3553(a), instead of the career offender enhancement. In *Carthorne I*, the government conceded that the exchange related to the career offender enhancement, and we construed the exchange as reflecting counsel's belief that any argument regarding ABPO as a predicate offense "would be 'without merit,' based on his understanding of the categorical approach used to determine whether a particular offense constituted a crime of violence." 726 F.3d at 509. The government has not proffered any evidence to contradict our prior view of the record.

duty to object to Carthorne's designation as a career offender on those grounds. *See Strickland*, 466 U.S. at 691; *Williamson*, 183 F.3d at 463; *Ramirez*, 799 F.3d at 855. Instead, counsel referenced research only addressing the question whether spitting on a person constitutes an assault and battery, which question would have been relevant only on a direct appeal of the *original* ABPO conviction. Such a misunderstanding on the part of counsel illustrates his basic failure to comprehend the relevant legal analysis. *See Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986) ("[A] single, serious error may support a claim of ineffective assistance of counsel.").

There are no strategic reasons that could have justified counsel's failure to object to the career offender enhancement. As a general rule, "counsel enjoys the benefit of a strong presumption that the alleged errors were actually part of a sound trial strategy." *Hyman v. Aiken*, 824 F.2d 1405, 1416 (4th Cir. 1987); *see also Gordon*, 518 F.3d at 1300–03 (holding that counsel's failure to object did not "amount[] to ineffective assistance per se" because counsel may have had strategic reasons not to object). However, as in the present case, this presumption is defeated when counsel fails "to do basic legal research," because "lack of preparation and research cannot be considered the result of deliberate, informed [sentencing] strategy." *Hyman*, 824 F.2d at 1416. Therefore, we hold that counsel's failure here to demonstrate a grasp of the relevant legal standards, to conduct basic legal research relating to those standards, and to object to the sentencing enhancement (even though there

18

was a strong basis for such an objection), taken collectively, constituted deficient performance.[7]

With regard to the prejudice prong of *Strickland*, it is undisputed that if the district court had not found that ABPO was a crime of violence, the high end of Carthorne's Guidelines range would have been almost seven and one-half years lower than the sentence actually imposed by the district court. *Carthorne I*, 726 F.3d at 508. If Carthorne's counsel had objected to ABPO as a predicate offense, there is a "reasonable probability" that the district court would not have applied the enhancement. *See, e.g.*, *United States v. Rangel*, 781 F.3d 736, 746 (4th Cir. 2015) (noting that a "reasonable probability" that the outcome of a sentencing would change is enough to show prejudice). Thus, the prejudice prong of the *Strickland* test is satisfied here.

We therefore conclude that Carthorne's claim satisfies both the performance prong and the prejudice prong of *Strickland*. Accordingly, he is entitled to be resentenced as a result of his counsel's ineffective assistance.[8]  *See* 28 U.S.C. § 2255(a).

III.

For these reasons, we vacate the district court's judgment, vacate Carthorne's sentence, and remand the case for resentencing by the district court.

---

[7] Moreover, the government fails to identify any possible strategic reason why counsel would decide not to object to the application of this sentencing enhancement.

[8] Based on our conclusions, we do not reach Carthorne's alternative argument requesting that this Court remand for an evidentiary hearing.

19

*VACATED AND REMANDED*