**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-7447**

MARK O'HARA WRIGHT,

       Petitioner – Appellant,

   v.

HAROLD CLARKE, Director, VA. Department of Corr.,

       Respondent – Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  James P. Jones, District Judge.  (7:18-cv-00533-JPJ-PMS)

Argued:  May 6, 2021                    Decided:  June 21, 2021

Before GREGORY, Chief Judge, and HARRIS and QUATTLEBAUM, Circuit Judges.

Reversed in part and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Chief Judge Gregory joined.  Judge Quattlebaum wrote a separate opinion, concurring in the judgment.

**ARGUED:**  J. Andrew Mackenzie, Joshua Short, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Victoria Lee Johnson, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.  **ON BRIEF:**  J. Scott Ballenger, Rachel Daley, Third Year Law Student, Anna Cecile Pepper, Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Mark R. Herring, Attorney General, K. Scott Miles, Deputy Attorney General, Donald E. Jeffrey, III, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA,

Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Petitioner Mark O'Hara Wright appeals the district court's denial of his § 2254 petition, based on his trial counsel's alleged ineffective assistance. On state collateral review, the Supreme Court of Virginia dismissed Wright's claim on the ground that his counsel's performance was not constitutionally deficient under *Strickland v. Washington*, 466 U.S. 668 (1984). According to Wright, the state court unreasonably applied clearly established federal law in reaching that judgment, deferring under *Strickland*'s first prong to a purportedly strategic judgment that in fact rested on an undisputed and constitutionally unreasonable mistake of law.

We agree with Wright. The Supreme Court of Virginia applied the wrong legal standard in assessing trial counsel's performance under *Strickland*. Under the correct and clearly established standard, trial counsel's performance fell below prevailing professional norms when he failed, without justification, to inform himself of state law critical to his client's case. We further conclude that had Wright's trial counsel been adequately informed, there is a reasonable probability that the outcome of his trial would have been different, establishing prejudice under *Strickland*'s second prong. Accordingly, we reverse in part the district court's dismissal of Wright's § 2254 petition and remand with instructions to grant relief on the claim of ineffective assistance of counsel.

I.

This case began when petitioner Mark O'Hara Wright, along with his brother, entered a grocery store in Virginia, took deli sandwiches and two cases of beer, and then

3

left without paying. Wright was convicted of the Virginia offense of grand larceny from the person and sentenced to ten years' imprisonment. He now seeks relief from that conviction under 28 U.S.C. § 2254, on the ground that his trial counsel's failure to object when his jury was instructed on grand larceny constituted ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), and thus violated his Sixth Amendment right to counsel.

## A.

On March 25, 2012, Wright and his brother, Robert, accompanied by Robert's 15-year-old stepson, drove to Martin's Grocery in Harrisonburg, Virginia. Wright and his brother walked into the grocery, took sandwiches and two cases of beer, and left without paying for their merchandise. The store's security guard, Garrett Atkins, followed the brothers to their minivan and took one of the cases of beer from Robert's hands. At that point, Robert's stepson stepped out of the minivan – with Wright on the opposite side of the van, out of Atkins's view – and "took a fighting stance," telling Atkins, "I'm going to fuck you up." J.A. 94. Robert then grabbed the beer back from Atkins, and Wright, Robert, and Robert's stepson left in the minivan, taking with them the sandwiches and beer.

A grand jury indicted Wright for robbery by means of violence, based on Robert's physical taking of the beer from Atkins in the parking lot.[1] On the day of Wright's 2012

---

[1] Wright also was charged with two other offenses stemming from the events at the grocery store: petit larceny, for originally taking the sandwiches and beer from the store without paying for them; and contributing to the delinquency of a minor, for the involvement of Robert's stepson. The jury convicted Wright on both counts, neither of which is at issue in this appeal.

4

trial, the indictment was amended to charge Wright with robbery as a principal in the second degree, meaning that Wright was present for and aided or abetted Robert's taking of the beer. *See Brown v. Commonwealth*, 107 S.E. 809, 810 (Va. 1921). In either form, the robbery charge would require the Commonwealth of Virginia ("Commonwealth") to prove that the beer was taken from Atkins by force or intimidation, and if convicted of this serious offense, Wright would face a sentence of five years to life in prison. *See* Va. Code Ann. § 18.2-58; *Commonwealth v. Hudgins*, 611 S.E.2d 362, 365 (Va. 2005) (describing elements of robbery). At trial, Atkins testified that he never spoke to Wright on the day of the incident; the one thing he heard from Wright's side of the minivan was someone saying, "let's go, let's go," after Robert had taken the beer from him. J.A. 100. And when asked "what state of mind" he had been put in by the confrontation in the parking lot, Atkins testified only that he was made "uncomfortable" by the "abnormal" events of the day. J.A. 96–97.

The jury instruction at the heart of this case was proposed after the close of evidence, when the Commonwealth asked that the jury be instructed not only on robbery but also on grand larceny from the person – which, unlike the robbery charge, would not require proof of force or intimidation, and carries a lower sentence of zero to 20 years' imprisonment. *See* Va. Code Ann. § 18.2-95; *Ali v. Commonwealth*, 701 S.E.2d 64, 67 (Va. 2010). Because Wright was not indicted for grand larceny, the state relied in seeking the instruction on the premise that grand larceny from the person is a lesser included offense of robbery. *See Commonwealth v. Dalton*, 524 S.E.2d 860, 862 (Va. 2000) (defendant may

5

be convicted of a crime with which he was not charged only if that crime is a lesser included offense of a charged crime).

Under Virginia law, a court must, upon counsel's request, instruct on a lesser included offense so long as there is evidence to support the charge. *See Barrett v. Commonwealth*, 341 S.E.2d 190, 193 (Va. 1986). And at the time of trial, counsel for both parties were "in agreement" that grand larceny from the person indeed was a lesser included offense of robbery. J.A. 212. Accordingly, Wright's counsel, Andrew C. Graves, did not object to the Commonwealth's proposed instruction, and the trial court issued Jury Instruction 10, allowing the jury to consider both robbery and grand larceny.

Specifically, the court instructed the jury that it should convict Wright of robbery if the Commonwealth proved beyond a reasonable doubt: "(1) That the defendant intended to steal; and (2) That the defendant took beer; and (3) That the taking was from Garrett Atkins or in his presence; and (4) That the taking was against the will of the owner or possessor; and (5) That the taking was accomplished by intimidation of the person or the threat of serious bodily harm." J.A. 270. If the Commonwealth could prove the first four elements but not the fifth – that is, not the intimidation or threat of bodily harm – *and* prove that the property taken was worth $5 or more, then the jury should "find the defendant guilty of grand larceny from the person." J.A. 270. Consistent with the Commonwealth's unchallenged representation, the verdict form listed grand larceny from the person as a lesser included offense of robbery.

In fact, and notwithstanding the parties' agreement to the contrary, grand larceny from the person is not a lesser included offense of robbery under Virginia law. Nor was

6

there any doubt on that point at the time of Wright's trial. *See Ali*, 701 S.E.2d at 67. Thus, it is now undisputed that Jury Instruction 10 was improper when issued, in that it allowed the jury to convict Wright of an offense for which he never was charged. *See Dalton*, 524 S.E.2d at 862. Moreover, neither party sought, and the court did not issue, an instruction allowing the jury to consider, in connection with the parking-lot encounter, robbery's *actual* lesser included offense of petit larceny, with its maximum sentence of one year. *See* Va. Code Ann. § 18.2-96; *see also Dufresne v. Commonwealth*, No. 161633, 2018 WL 1096067, at *1 (Va. Mar. 1, 2018) (explaining that petit larceny is a lesser included offense of robbery); *Yellardy v. Commonwealth*, 561 S.E.2d 739, 743 (Va. Ct. App. 2002) (same).

After deliberation, the jury acquitted Wright of robbery. But it found him guilty of grand larceny from the person, and recommended a sentence of ten years' imprisonment for that offense. The court accepted that recommendation and imposed the entirety of the ten-year sentence. Wright now is scheduled for release from prison on September 7, 2021.[2]

**B.**

The relevant post-conviction proceedings began in 2017, when Wright filed a pro se petition for a writ of habeas corpus in the Supreme Court of Virginia. Wright raised

---

[2] At the close of trial, Wright was sentenced to a total of 22 and a half years' imprisonment. That total accounted for convictions on several additional charges relating to events that transpired when Wright and his brother were arrested after leaving the grocery store. The Supreme Court of Virginia later overturned those convictions on appeal on insufficiency of the evidence grounds. *See Wright v. Commonwealth*, 789 S.E.2d 611, 618 (Va. 2016). That left Wright with a sentence of 11 and a half years: ten years for grand larceny from the person, and the rest for the two additional convictions for petit larceny and contributing to the delinquency of a minor, noted above.

7

several claims, including the only one at issue here: that his trial counsel, Graves, provided ineffective assistance in violation of the Sixth Amendment when he failed to object to the court's instruction on grand larceny from the person. Because Virginia law makes clear that grand larceny from the person in fact "*is not* a lesser included offense of robbery," Wright argued, "[a]ny reasonably competent attorney would have known" that an objection was in order. J.A. 304–05.

The Supreme Court of Virginia remanded that claim to the trial court for an evidentiary hearing. After the hearing, the trial court found, as a matter of fact, that on the day of Wright's trial, Graves was "unaware that larceny from the person is not a lesser included offense of robbery." J.A. 384. But, the court noted, Graves testified that he "believe[d] he would not have objected to the instruction whether he did or did not know" the relevant law, because it would have been advantageous for the jury to have the option of convicting Wright of an offense less serious than robbery. J.A. 384. Thus, the court reasoned, "[t]here was a strategy coupled with a lack of knowledge." J.A. 385.

Back before the Supreme Court of Virginia, Wright argued that his trial counsel's failure to object could not be considered strategic if counsel did not know that he had any basis upon which to object. The court disagreed and dismissed Wright's petition, finding that Graves's performance was not deficient under *Strickland*. *See Wright v. Woodson* (*Wright I*), No. 170163, 2018 WL 5077908, at *3–4 (Va. Oct. 18, 2018).

The Supreme Court of Virginia did not question the finding that Graves was unaware that grand larceny from the person was not a lesser included offense of robbery. Nor did it consider whether Graves's failure to inform himself of that highly relevant law

8

fell below an objective standard of reasonable assistance in light of prevailing professional norms. Instead, the court asked a different question: whether a hypothetical fully informed and competent counsel "could still have decided" to forgo an objection to Jury Instruction 10, so that the jury would have in front of it an alternative to robbery with a lower sentencing range. *Id.* at \*3. And because Wright could not show that "no competent counsel" might have made that strategic decision, the court concluded, he could not establish that Graves's performance was deficient. *Id.* at \*4 (emphasis and internal quotation marks omitted). That holding disposed of Wright's claim, and the court did not reach the question of whether Wright could show prejudice under *Strickland*'s second prong.

In October 2018, still proceeding pro se, Wright filed a § 2254 petition in federal court, *see* 28 U.S.C. § 2254, again asserting – among other claims not at issue here – his ineffective assistance of counsel claim. The district court granted the Commonwealth's motion to dismiss, holding that the Supreme Court of Virginia did not unreasonably apply federal law in determining that Graves performed competently. *See Wright v. Clarke* (*Wright II*), No. 7:18-cv-00533, 2019 WL 4534026, at \*8–9 (W.D. Va. Sept. 19, 2019) (citing 28 U.S.C. § 2254(d)). Graves's "outright legal errors" notwithstanding, the district court concluded, the Supreme Court of Virginia reasonably could find that he had made a

9

"tactical choice" not to object to Jury Instruction 10, so that the jury would have a "less onerous" alternative to robbery. *Id.* at *9.

Wright filed a timely appeal with this court. We granted a partial certificate of appealability and appointed counsel.

**II.**

We review a district court's denial of a habeas petition de novo. *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 523 (4th Cir. 2016). In evaluating Wright's claim of ineffective assistance, we apply the framework set out in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*'s "deficiency" prong – the one on which the Supreme Court of Virginia relied – a petitioner first must show that his lawyer's performance "fell below an objective standard of reasonableness." *Id.* at 688. And under *Strickland*'s second prong, a petitioner also must show prejudice, in the form of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Our review of counsel's performance always is deferential under *Strickland*. *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). But it is "doubly" so in cases like this one, involving § 2254 petitions. *Id.* (internal quotation marks omitted). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as the district court recognized, a federal court may grant relief on a § 2254 claim only if a state court's merits determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

10

Wright can prevail here, in other words, only if he can show both that his counsel's performance was objectively unreasonable and undeserving of deference, and also that the Supreme Court of Virginia's finding to the contrary was itself "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (internal quotation marks omitted). That is a high standard, but in this case and for the reasons given below, we think that Wright has met it.[3]

**A.**

We begin with the issue that was dispositive for the Supreme Court of Virginia: whether Graves's performance was deficient under *Strickland*'s first prong, falling below an objective standard of reasonableness when measured against "prevailing professional norms." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (internal quotation marks omitted); *see also Hinton v. Alabama*, 571 U.S. 263, 273 (2014); *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017). Only acts or omissions that fall "outside the wide range of professionally competent assistance" will amount to constitutionally deficient performance. *Strickland*, 466 U.S. at 690. As we note above, this is a "highly deferential" standard, recognizing the "wide latitude counsel must have in making tactical decisions." *Id.* at 689.

---

[3] Because the state court ended its analysis with *Strickland*'s first prong, there is no state judgment to which we owe AEDPA deference on *Strickland*'s prejudice prong. Accordingly, and as discussed below, we assess the prejudice question de novo. *See Wiggins*, 539 U.S. at 534.

At the same time, however, *Strickland* makes clear that one critical element of constitutionally reasonable performance is an adequate investigation of relevant facts and law. *Id.* at 690–91 (discussing counsel's duty to make "reasonable investigations"). "[P]revailing professional norms," that is, "include the duty to investigate and to research a client's case in a manner sufficient to support informed legal judgments." *Carthorne*, 878 F.3d at 466; *see, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 395 (2000) (finding counsel's performance deficient for unreasonable failure to investigate mitigating evidence). And that duty includes, as it must, a duty to investigate law as well as facts: "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton*, 571 U.S. at 274.

It follows, as the Court explained in *Strickland*, that an act or omission undertaken by counsel in ignorance of the law can be deemed objectively reasonable if and only if the failure to conduct legal research itself reflected a "reasonable professional judgment[]." *Strickland*, 466 U.S. at 690–91. It is the "particular decision not to investigate" the law, that is, that must be "assessed for reasonableness in all the circumstances." *Id.* at 691. And if that decision was *not* reasonable – if counsel unreasonably failed to "demonstrate a basic level of competence regarding the proper legal analysis governing" his case, *Carthorne*, 878 F.3d at 466 – then no deference is owed to purportedly "strategic" actions that follow. *See Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (finding that counsel's failure to request discovery cannot be deemed "strategic" where it rests on "mistaken belief[]" about the law); *Carthorne*, 878 F.3d at 469 (explaining that presumption that counsel is acting

12

strategically is "defeated when counsel fails to do basic legal research, because lack of preparation and research" cannot themselves be considered strategic (internal quotation marks omitted)); *see also Thompson v. Gansler*, 734 F. App'x 846, 855 (4th Cir. 2018) ("[M]yriad controlling opinions stand[] for the proposition that acts or omissions made by counsel under a mistaken belief or an ignorance of law are rarely – if ever – 'reasonable' in light of prevailing professional norms.").

The performance of Wright's counsel was plainly deficient under this well-established standard. When he declined to object to Jury Instruction 10, counsel was unaware that the stated and critical premise for that instruction – that grand larceny from the person is a lesser included offense of robbery – was legally incorrect. Under *Strickland*, the question then becomes whether counsel's failure to investigate this pivotal point of law can itself be deemed reasonable, applying the appropriately deferential standard. *See* 466 U.S. at 691. Here, there are no "reasonable professional judgments," *id.*, that could support counsel's failure to inform himself of the governing law, and the Commonwealth does not meaningfully argue otherwise.

There is no suggestion, for instance, that the legal research involved would have been difficult or resource-intensive; at the time of trial, Virginia law on the point was unequivocal and long-standing. *See Ali*, 701 S.E.2d at 67. Indeed, counsel could have learned that grand larceny from the person is not a lesser included offense of robbery simply by reviewing Jury Instruction 10, which on its face demonstrates that each offense "requires proof of a fact that the other does not," *see Hudgins*, 611 S.E.2d at 364 (internal quotation marks omitted): for robbery, proof of intimidation or threat of serious bodily

13

harm; and for grand larceny from the person, proof that the property taken was worth at least $5. *See* J.A. 270. Nor can counsel's failure to familiarize himself with the relevant law be excused by the pressures of the moment. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ."). Although the Commonwealth may have surprised defense counsel with its proposed instruction during trial, counsel and the prosecutor subsequently took a substantial recess to discuss the jury instructions, during which counsel would have had ample opportunity to assess the lawfulness of the instruction on grand larceny.

In this case, in short, counsel's failure to perform even a minimal investigation of the law cannot be said to reflect a "reasonable decision" or trial strategy. *See id.* at 691. And that unreasonable ignorance of the law left counsel wholly unable to make the kind of "tactical" decision regarding Jury Instruction 10 that the Commonwealth now attributes to him. Indeed, from counsel's perspective, there was no decision to be made at all: Grand larceny from the person was a lesser included offense of robbery; the Commonwealth therefore was entitled to its requested instruction under Virginia law, *see Barrett*, 341 S.E.2d at 193, leaving counsel with no grounds for objection; and so the jury would be instructed on grand larceny from the person at the Commonwealth's election, regardless of whether counsel thought that would help or hurt his client. Because no "reasonable professional judgments" can justify counsel's lack of investigation into the relevant law, his failure to object to Jury Instruction 10 is similarly unreasonable, and his performance deficient under *Strickland*. *See Strickland*, 466 U.S. at 691 ("[C]hoices made after less

14

than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *see also Wiggins*, 539 U.S. at 526 (finding ineffective assistance when counsel's "failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment").

The Supreme Court of Virginia did not reach a different conclusion as to whether Graves's unawareness of the law took him "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Indeed, it failed to address that question at all – misapplying the clearly established federal law that requires a reviewing court to "directly assess[] for reasonableness" counsel's "particular decision" not to inform himself of pertinent law. *See id.* at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness . . . ."). Instead, it evaluated Graves's performance by asking only whether some other hypothetical counsel, fully informed of the law, reasonably could have allowed Jury Instruction 10 to go to the jury as a matter of strategy. *See Wright I*, 2018 WL 5077908, at *4. Here again, the Supreme Court of Virginia misapplied clearly established federal law, conflating *Strickland*'s performance and prejudice prongs.

As the Supreme Court has made clear, an unreasonable failure to investigate the law is *itself* deficient performance. *See Hinton*, 571 U.S. at 274. And that does not change if counsel arrives, by luck or accident, at a decision that an appropriately informed counsel also might have reached. That is because the objective merits of a decision made under an unreasonable and deficient mistake of law – here, counsel's agreement to Jury Instruction 10 – do not govern the performance analysis. As the Supreme Court explained in *Wiggins*,

15

"[O]ur principal concern in deciding whether [an attorney] exercised 'reasonable professional judgmen[t]' is not whether counsel *should* have [made a particular decision]. Rather, we focus on whether the investigation supporting counsel's decision . . . *was itself reasonable*." 539 U.S. at 522–23 (quoting *Strickland*, 466 U.S. at 691) (first emphasis added).

It may well be the case, as the Supreme Court of Virginia concluded, that a reasonably informed counsel could have made a tactical decision to agree to Jury Instruction 10, notwithstanding its invalidity, so that Wright's jury would have the option of convicting for an offense that carried a lesser penalty than robbery. *See Wright I*, 2018 WL 5077908, at *4. But as we detail below, that possibility is accounted for under *Strickland*'s prejudice prong, which asks whether there is a "reasonable probability" that appropriately informed counsel would have made a different decision and obtained a different result. *See Strickland*, 466 U.S. at 694. The Supreme Court applied just that distinction in *Kimmelman*, in which it held that counsel's failure to request discovery, based on "mistaken beliefs" about the law, constituted deficient performance. 477 U.S. at 385. Whether the evidence in question was important enough to warrant discovery, the court explained, would be "pertinent to the determination whether [the defendant] was prejudiced by his attorney's incompetence," but "shed[] no light on the reasonableness" of counsel's actual decision, which reflected "ignorance of the law" rather than strategic judgment. *Id.* at 385, 387; *cf. United States v. Muniz*, 647 F.3d 619, 624–25 (6th Cir. 2011)

16

(holding that counsel who fell asleep during trial performed deficiently and that whether an "awake" counsel would have objected was a matter of prejudice, not performance).[4]

The Supreme Court of Virginia misapplied clearly established law in evaluating counsel's performance, leading it to the "objectively unreasonable" conclusion, *see Wiggins*, 539 U.S. at 521 (internal quotation marks omitted) (applying § 2254(d)(1)), that petitioner could not show constitutional deficiency under *Strickland*. Under *Strickland* and its progeny, counsel must adequately inform himself of the law fundamental to the case or have some objectively reasonable justification for failing to do so. Wright's trial counsel was inadequately informed, and unreasonably so. That he now believes he would have agreed to Jury Instruction 10 even if he had *not* unreasonably failed to learn the relevant law, *see* J.A. 384 (describing Graves's testimony at post-conviction hearing), may bear on *Strickland*'s prejudice prong, but it does not retroactively redeem his performance at the

---

[4] The Supreme Court of Virginia relied in part on a decision of the Tenth Circuit, *Bullock v. Carver*, 297 F.3d 1036 (2002), in measuring performance by asking whether a reasonably informed counsel might have made the same decision as Wright's uninformed trial counsel. *See Wright I*, 2018 WL 5077908, at *4. That, too, was in error. First, a circuit court decision cannot justify what otherwise would be an unreasonable application of "clearly established Federal law, as determined by the Supreme Court" under 28 U.S.C. § 2254(d)(1). And as *Bullock* itself acknowledges, in a case involving a counsel's mistake of law, *Strickland*'s "language" makes clear precisely the law we have laid out above: "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 297 F.3d at 1049 n.6 (quoting *Strickland*, 466 U.S. at 690–91). Indeed, the Tenth Circuit since has clarified that it follows *Strickland*'s "objectively reasonable" standard for evaluating counsel's performance, and that any suggestion to the contrary in *Bullock* is dicta. *See Hooper v. Mullin*, 314 F.3d 1162, 1170 n.3 (2002).

time of trial, *see Wiggins*, 539 U.S. at 521, 526–27 (rejecting "*post hoc* rationalization" for deficient performance).

**B.**

Having found that Graves performed deficiently under clearly established law, we turn to the Commonwealth's argument that Wright was not prejudiced under *Strickland*'s second prong. As noted above, we address this question de novo; because the Supreme Court of Virginia did not reach the issue of *Strickland* prejudice, our review is not circumscribed by AEDPA's standard of review. *See Wiggins*, 539 U.S. at 534. Nor, in assessing prejudice, do we apply the "highly deferential" standard used to assess counsel's performance under *Strickland*. *See Carthorne*, 878 F.3d at 465, 469. Instead, we ask only whether there is a "reasonable probability" that counsel's ignorance of the law affected the trial's outcome. *See Kimmelman*, 477 U.S. at 375. And while we recognize that even a fully informed trial counsel might have agreed to Jury Instruction 10 under the circumstances of this case, we think there also is a reasonable probability that he would not have, leading to a different outcome in Wright's trial.

As discussed above, when counsel's purportedly "tactical" decision reflects an unreasonable and thus deficient failure to investigate the law, the objective merits of that decision are relevant to the prejudice inquiry, though not to the performance prong, *see id.* at 387: The more likely it is that a hypothetical informed counsel would have made the same decision, the less likely it is that actual counsel's deficient performance mattered to the outcome of the trial. And indeed, there will be cases in which an act or omission, though undertaken in ignorance of the law, is so plainly the only reasonable or most

18

reasonable trial tactic that there is no realistic probability that competent counsel would have acted differently. *Cf. Muniz*, 647 F.3d at 624–25 (holding that deficient performance by sleeping counsel did not prejudice defendant because even "awake" counsel could not and would not have objected).

This is not such a case. Again, we do not question the Supreme Court of Virginia's assessment that an informed counsel reasonably could have made a tactical decision to accede to the improper jury instruction, believing that Wright would benefit if the jury had an option of finding him culpable but convicting him of a crime less serious than robbery. *See Wright I*, 2018 WL 5077908, at *3–4. But that was not the only reasonable strategic judgment available to our hypothetical and fully informed counsel. That counsel, knowing that grand larceny from the person was *not* a lesser included offense of robbery and thus could *not* be sent to the jury, might have lodged what he knew would be a successful objection to Jury Instruction 10, deciding that his client would be better off if the jury were instructed only on robbery. Because the Commonwealth's key witness, security guard Atkins, had not testified to feeling intimidated or threatened in the parking lot, the jury well might have acquitted on robbery even without an alternative charge – a thought that may have occurred to the Commonwealth, too, given its last-minute request for a lesser-included-offense instruction. And there was a third option, as well. Even assuming he did not want to make an "all or nothing" bet on robbery, an informed counsel would have known that he could have objected successfully to Jury Instruction 10 and instead sought an instruction on petit larceny, an actual lesser included offense of robbery with a

19

maximum sentence of one year imprisonment, as opposed to the 20-year maximum for grand larceny from the person.[5]

This is a complicated decision-tree, calling for a careful weighing of risks and potential rewards. Wright's actual counsel, as we have explained, failed to put himself in a position to make such an informed strategic judgment on Wright's behalf. *See Carthorne*, 878 F.3d at 466 (describing duty to perform legal research sufficient to support informed legal judgments). But given the multiple options available to a hypothetical informed counsel, each with its own strategic merits, we think there is a "reasonable probability" that such counsel would have chosen not to send to the jury an instruction on grand larceny that he knew to be improper, and would instead have objected to Jury Instruction 10 – either to put the jury to the choice of convicting on robbery or acquitting outright, or to seek instead an instruction on an actual lesser included offense with lower sentencing exposure.

The rest of the prejudice inquiry is straightforward. Had counsel objected to Jury Instruction 10, it is highly likely that the objection would have been sustained; as all parties

---

[5] The district court ruled that Wright had procedurally defaulted any claim that counsel provided ineffective assistance by failing to seek an instruction on petit larceny, *see Wright II*, 2019 WL 4534026, at *5, and the Commonwealth continues to argue that point on appeal. But Wright, to be clear, is not claiming that his counsel performed ineffectively by failing to request a petit larceny instruction. Instead, Wright contends – as he has consistently, in state and federal court – that he was denied the effective assistance of counsel when his lawyer failed to object to the improper instruction on grand larceny from the person, and that the availability of a petit larceny alternative merely informs our assessment, under *Strickland*, of his counsel's performance and the resulting prejudice. As no party disputes, those arguments are properly presented, and we take them into account here.

now agree, that instruction was plainly improper, allowing the jury to convict on a charge for which Wright had not been indicted. *See Dalton*, 524 S.E.2d at 862. It also is highly likely that a jury instructed only on robbery would have acquitted Wright of that charge: The actual jury did acquit Wright of robbery, finding that the Commonwealth had failed to prove the elements of that crime beyond a reasonable doubt, and we may presume that the jury did its job lawfully and properly. And had the jury been instructed on petit larceny, it might or might not have convicted Wright of that crime – but either way, Wright would have served no more than one year for the offense, as opposed to his ten-year sentence on grand larceny from the person. In short, had trial counsel objected to Jury Instruction 10, there is, at the very least, a "reasonable probability" that the outcome of Wright's trial would have been different and more favorable to him.[6]

In *Strickland*, the Supreme Court rejected a higher standard for prejudice in favor of the one we apply today: a reasonable probability, "sufficient to undermine confidence in the outcome," of a different result had counsel's performance met minimum

---

[6] The Commonwealth raises a different possibility: If counsel had objected to Jury Instruction 10, the Commonwealth suggests, then the prosecutor might have moved to amend Wright's indictment to include a grand larceny from the person charge, allowing for a jury instruction on that offense. Perhaps so. But, based on his statements to the trial court, the prosecutor believed grand larceny was a lesser included offense of robbery, and there is no indication that he would have insisted on the instruction once he was informed otherwise. And even if the prosecutor had moved to amend Wright's indictment – a decision that, per the prosecutor's own testimony at the post-conviction hearing, would have been "unusual," J.A. 374 – whether to grant such a motion rests with the discretion of the trial court. *See* Va. Code Ann. § 19.2-231. Given these imponderables, we do not think this prospect sufficiently likely to defeat a "reasonable probability" of a different result.

21

constitutional standards. 466 U.S. at 693–94 (rejecting requirement that defendant show counsel's deficient performance "more likely than not" altered outcome). Here, we cannot be confident that trial counsel's lack of basic knowledge on a fundamental point of law did not prejudice his client. Because there is a "reasonable probability" that counsel's deficient performance – his unreasonable failure to inform himself of the law – affected the outcome of Wright's trial, Wright is entitled to relief on his Sixth Amendment claim of ineffective assistance of counsel.

## III.

For the foregoing reasons, we reverse in part the judgment of the district court and remand with instructions to grant the writ on Wright's Sixth Amendment ineffective assistance claim.

*REVERSED IN PART AND REMANDED*

QUATTLEBAUM, Circuit Judge, concurring in the judgment:

I concur in the judgment of the panel.